**NATIONAL BANK OF DETROIT,**
Plaintiff,

v.

**Francis D. SHELDEN, et al.,**
Defendants.

The **TRUST COMPANY OF the VIRGIN ISLANDS, LTD.,** (No. 82–1905) and Peter J. Cipollini, (No. 82–1737), Defendants-Appellants,

v.

**L. Bennett YOUNG and Detroit Bank and Trust Company, Second Successor Co-Trustees, Intervening Defendants-Appellees.**

Nos. 82–1737, 82–1905.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 1, 1983.

Decided March 8, 1984.

Peter J. Cipollini, Charles E. Wilson, Jr. (argued), Cincinnati, Ohio, for plaintiff.

Michael Golob (argued), Ivan E. Barris, Detroit, Mich., for defendants.

Before JONES and KRUPANSKY, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

PHILLIPS, Senior Circuit Judge.

This litigation began with the filing of a complaint in the nature of an interpleader by the National Bank of Detroit pursuant to 28 U.S.C. § 1335.

Francis D. Shelden, a native of Michigan, established a revocable inter vivos trust on September 18, 1976, naming as trustee the Trust Company of the Virgin Islands, Ltd. (sometimes referred to herein as the Virgin Islands Trust Company.) The trustee was identified as having been organized in the British Virgin Islands. The principal question presented in this litigation is who are the present trustees of this trust.

**I.**

The complaint stated that as of May 1, 1978, the National Bank of Detroit held the sum of $218,900.07 on deposit in the corporate account of Windigo Ranch, Inc. and $4,955.25 on deposit in the corporate account of FDS Land Company; these funds were claimed by defendant the Trust Company of the Virgin Islands, Ltd. as trustee of the Shelden trust; and that the funds also were claimed by defendant Alger Shelden, Jr. (brother of Francis D. Shelden) and

L. Bennett Young as officers of the two corporations.

The trust instrument[1] was filed as an exhibit to the complaint, together with a list of shares of marketable securities in twenty-four corporations constituting the corpus of the trust. The securities were valued by Shelden at approximately two million dollars. In his *de bene esse* deposition, Shelden testified that he delivered these securities to Adam Starchild, founder and original owner of the Virgin Islands Trust Company.[2] Included in the corpus of the trust were all the issued and outstanding stock of defendants FDS Land Company, a Michigan Corporation, and Windigo Ranch, Inc., a Colorado Corporation. All the corporate stock of both these corporations were owned by Shelden at the time of the establishment of the trust.

The Trust Company of the Virgin Islands averred that as Trustee it had removed Alger Shelden, Jr. and Young as officers of both corporations and had elected defendant Samuel Glasser of Michigan as president and treasurer and defendant Ronald J. Zadora as secretary of the two corporations. Glasser claimed to be the sole designated beneficiary of both bank accounts.

Alger Shelden, Jr. and L. Bennett Young averred that The Trust Company of the Virgin Islands, Ltd. had been replaced as trustee of the Shelden trust before its purported action attempting to remove them as corporate officers.

Francis D. Shelden was named as party defendant to the interpleader action. He filed no pleading, but was not dismissed as a party defendant. His *de bene esse* deposition is a part of the discovery evidence. The complaint also averred on information and belief that Francis D. Shelden currently was being sought by the Federal Bureau of Investigation under a fugitive warrant and that his whereabouts were unknown to the plaintiff bank.

Also named as a defendant to the interpleader action was Edward Brongersma of the Netherlands, who was found by the district court to have been appointed first successor trustee of the trust, replacing The Trust Company of the Virgin Islands, Ltd. as trustee. His affidavit was filed in the discovery proceedings and is a part of the record.

L. Bennett Young and the Detroit Bank and Trust Company were permitted by the district court to intervene as defendants in the interpleader action in their capacities as second successor co-trustees of the Shelden trust.

In its interpleader complaint, National Bank of Detroit tendered all funds in the two bank accounts for deposit with the clerk of the district court and prayed that the defendants be required to answer and settle their respective claims to the bank accounts on deposit by the two corporations. The district court authorized the clerk to receive these funds.

An answer to the complaint was filed by L. Bennett Young and the Detroit Bank and Trust Company, asserting that they are the second successor trustees of the trust; and that as successor trustees they are entitled to both bank accounts. The answer of The Trust Company of the Virgin Islands, Ltd. claimed that it is the trustee of the trust and is entitled to the funds in both bank accounts. Appellant Peter J. Cipollini filed an answer asserting that he is the duly elected president and treasurer of both Windigo Ranch, Inc. and FDS Land Company and the duly authorized signatory of both corporations and prayed that all the funds of the two corporations be transferred to him.

## II.

After discovery proceedings, including the deposition of Francis D. Shelden *de*

---

1. Pertinent parts of the trust instrument are made Appendix No. 1 to this opinion.

2. The record indicates that The Trust Company of the Virgin Islands, Ltd. was established by Starchild for the purpose of administering the Shelden trust. In his *de bene esse* deposition Shelden testified that "The Trust Company of the Virgin Islands was Adam Starchild's alter ego."

*bene esse,* a motion for summary judgment was filed on May 17, 1982 by L. Bennett Young and the Detroit Bank and Trust Company in their asserted capacities as second successor trustees of the trust. The motion for summary judgment was opposed vigorously by the Virgin Islands Trust Company.

District Judge Charles W. Joiner on August 20, 1982 granted the motion for summary judgment, finding that L. Bennett Young and the Detroit Bank and Trust Company are lawful and proper second successor trustees of the Francis D. Shelden Revocable Inter Vivos Trust; that the second successor trustees are the rightful owners of all the outstanding shares of stock of FDS Land Company and Windigo Ranch, Inc.; and that the two second successor trustees are entitled to the funds on deposit with the Clerk of the Court on behalf of Windigo Ranch, Inc. and FDS Land Company. The findings of fact and conclusions of law of Judge Joiner are made Appendix No. 2 to this opinion. On August 23, 1982, Judge Joiner entered a judgment that the Clerk of the Court pay to L. Bennett Young and Detroit Bank and Trust Company on behalf of FDS Land Company and Windigo Ranch, Inc., the funds on deposit, together with all accrued interest.

On August 24, 1982, Judge Joiner received a mailgram from Adam Starchild, Box 1608 Tarpon Springs, Florida, attacking L. Bennett Young and charging that "he will resort to any method to illegally obtain the funds to which he knows he has no entitlement, and no money should be handed over to him." Judge Joiner ordered the parties to respond to this mailgram. After considering the responses and the deposition of L. Bennett Young, taken on August 19, 1982, in other litigation[3] between the parties in the United States District Court of Puerto Rico, Judge Joiner on October 4, 1982 denied the motion

for rehearing filed by the Trust Company of the Virgin Islands.

The Trust Company of the Virgin Islands, Ltd. and Peter J. Cipollini appeal. We affirm.

### III.

A party seeking summary judgment bears the burden of proving there is no genuine issue of material fact. The evidence must be viewed in the light most favorable to the non-movant. In *Glenway Industries, Inc. v. Wheelabrator-Frye, Inc.,* 686 F.2d 415, 417 (1982), this court wrote:

> The court of appeals is mandated to apply the same test in passing upon an award of summary judgment as that utilized by the trial court to grant the motion. *Howard v. Russell Stover Candies, Inc.,* 649 F.2d 620 (8th Cir.1981). Accordingly the conclusions of the trial court are not protected by the "clearly erroneous" rule, *Luckett v. Bethlehem Steel Corp.,* 618 F.2d 1373 (10th Cir. 1980), but rather the appellate tribunal, viewing the evidence in the light most favorable to the party opposing judgment, must determine if a genuine issue of material fact exists. *Smith v. Hudson,* 600 F.2d 60 (6th Cir.1979), *cert. denied,* 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979). *See also Security National Bank v. Belleville Livestock Commission Co.,* 619 F.2d 840 (6th Cir. 1980).

*Accord: New Jersey Life Insurance Co. v. Getz,* 622 F.2d 198, 200 (6th Cir.1980).

In applying this standard, we look to the record to determine whether there are any genuine issues of material fact.

### IV.

We reemphasize that the controlling issue presented by the interpleader complaint is who are the trustees of the trust established by Francis D. Shelden. The district court found: (1) that the original

---

**3.** This deposition of Young was taken in the case of *Shelden v. The Trust Company of the Virgin Islands, Ltd.,* in which the opinion of the

District Court of Puerto Rico is published in 535 F.Supp. 667 (D. Puerto Rico 1982). That decision is discussed in Part VI of this opinion.

trustee named by the settlor was the Trust Company of the Virgin Islands, Ltd.; (2) that the original trustee was removed legally and in accordance with the provisions of the trust instrument and on April 13, 1978 Edward Brongersma of the Netherlands was named as first successor trustee; (3) that thereafter, the first successor trustee was removed legally and in accordance with the trust instrument; (4) that L. Bennett Young of Michigan and the Detroit Bank and Trust Company were named second successor co-trustees; (5) that the settlor, in his *de bene esse* deposition, reaffirmed the fact of each of the foregoing steps; and (6) that L. Bennett Young and the Detroit Bank and Trust Company are the lawful and proper second successor co-trustees.

Viewing the evidence in the light most favorable to Appellants, we conclude that there is no genuine issue of material fact as to the identity of the present trustees of the trust. The trust instrument (See Appendix No. 1 hereto) gave both the settlor and the protector of the trust express authority to remove trustees and appoint successor trustees. Each of the changes in trustees was made in accordance with the provisions of the trust instrument; they were verified by documentary evidence, and ratified by Francis D. Shelden in his *de bene esse* deposition.

In the course of the discovery proceeding, Appellees filed a motion for leave to take the deposition of Francis D. Shelden *de bene esse* pursuant to Federal Rule of Civil Procedure 32. Over the objection of Appellants, on November 24, 1981 Judge Joiner ordered that the deposition be taken *de bene esse* in the Netherlands at a date and time to be arranged between counsel for the parties. Full opportunity to be present for the deposition was accorded by the district court to counsel for Appellants, but they did not participate.[4]

The *de bene esse* deposition was taken on March 31, 1982, at the time and place scheduled, but counsel for Appellants did not make an appearance. Counsel for Appellees waited one hour for opposing counsel to appear, then proceeded with the deposition at 10 a.m. Counsel for Appellants in a letter to counsel for Appellees offered the explanation that Starchild had been out of jail only two weeks and his Parole Board refused to permit him to travel. The record contains no explanation as to why counsel for Appellants could not have interviewed Starchild in jail or immediately after his release from incarceration.

On June 18, 1982 counsel for Appellants filed a motion to suppress the Shelden deposition because he had not signed it. Judge Joiner ordered that the deposition be submitted to Francis D. Shelden for reading and signing in accordance with Federal Rule of Civil Procedure 30. In all other respects Appellants' motion to suppress the deposition, or for an evidentiary hearing, was denied by the district court.

On July 9, 1982 Francis D. Shelden signed and swore to the deposition, with the following attestation:

> tion of Francis D. Shelden; and Starchild was incarcerated in the Passaic County Jail in New Jersey; that Starchild's Parole Board had fixed a date for his release from jail within the next three months, and counsel believed that Starchild would be released before March 1, 1982. An adjournment of the Shelden deposition was requested until after March 25, 1982.
>
> Judge Joiner entered an order directing that Shelden's *de bene esse* deposition be adjourned from January 27, 1982, and that it be taken and completed before April 1, 1982. On March 5, 1982, Counsel for Appellees gave written notice to counsel for Appellants that the Shelden deposition would be taken on Wednesday, March 31, 1982 at 9 a.m. at the office of L.J.W.M. Schroeder in Amsterdam at the address indicated in their previous notice.

**4.** When the attorneys did not agree upon a date, Judge Joiner issued an order directing that the deposition be taken in the City of Amsterdam in the Netherlands during the week of January 25, 1982. The attorneys for Appellees gave written notice on December 17, 1981 to counsel for Appellants that the deposition would be taken at the offices of L.J.W.M. Schroeder, at J.W. Brouwerg's Plein 10, Amsterdam, Netherlands on Wednesday, January 27, 1982 at 9 a.m.

Counsel for Appellants gave notice of a hearing before Judge Joiner on January 12, 1982 on their motion to adjourn the *de bene esse* deposition. The reason given for adjournment was the averment of the attorneys for Appellants that they needed the assistance of Adam Starchild, founder of the Trust Company of the Virgin Islands, Ltd., in preparing for the deposi-

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my notarial seal at Detroit, County of Wayne, State of Michigan, this 15th day of April, 1982 A.D.

/s/ ALTON D. COBB, JR.
RPR, CSR–2520
Notary Public, Wayne County, Michigan
My Commission Expires:
4/24/82

I, Francis D. Shelden, who, being first duly sworn, does depose and say that on this 9 day of July, 1982, he has read the foregoing deposition transcript in its entirety and that the transcript is a full, complete and accurate record of his testimony during said deposition.

/s/ FRANCIS D. SHELDEN

The undersigned,

Meester Leo Johannes Willem Marie Schroeder, notaris with office in Amsterdam,

declares that the signature on this page is the signature of Meester Francis D. Shelden, the Deponent herein, who has solemnly affirmed before me, a notaris, that his statement is the truth, the whole truth and nothing but the truth.

Amsterdam, 9—7—, 1982.

/s/ LEO JOHANNES WILLEM MARIE SCHROEDER

[SEAL]

Francis D. Shelden testified that he was born in Detroit, Michigan on September 5, 1928, a son of Alger Shelden; that he had only one sibling, a brother, Alger Shelden, Jr.; that he received a Bachelor of Arts degree from Yale University; that he served in the United States Air Force during the Korean War; that he owns and flies his own plane; that he received a Master of Science degree in geology from Wayne State University; that he completed his course work for a Ph.D. degree at the University of Michigan, but had not completed his doctoral thesis; that he had been active in exploration for oil in Michigan and in real estate projects with his father and brother, earning a substantial income; and that he inherited considerable wealth from his father and grandfathers, Henry D. Shelden and Russell A. Alger.

Shelden testified that in 1976 he owned approximately two million dollars in marketable securities which he had inherited; and that he also owned other assets, including a condominium in Colorado and undeveloped land in and around Charlevoix, Michigan. He also owned all the stock in FDS Land Company and Windigo Ranch, Inc., which were being managed by L. Bennett Young.

The events leading to the involvement of Shelden with Adam Starchild and the creation of the revocable inter vivos trust were described by Shelden as follows:

In July 1976 Shelden received a telephone call from Deyer Grossman who said that a mutual acquaintance by the name of Gerald Richards was having severe "difficulties" and that Richards might involve Shelden in these "difficulties"; and that Shelden might become the subject of blackmail by Richards. Shelden testified that Grossman "suggested that it might be wise for me to leave the country for awhile … to await events." Shelden said that his immediate concern was protecting his assets, especially his negotiable stocks. He asked Grossman for advice. Grossman suggested that Shelden contact Adam Starchild, an investment counseler specializing in offshore investments. Shelden had never met Starchild but telephoned him in New Jersey and asked for his advice. Starchild recommended that Shelden bring his stock certificates to New Jersey and discuss the matter with him further.

Shelden removed the securities from his bank safety deposit box and took them with him to New Jersey. Starchild convinced him of his alleged expertise in establishing tax shelters. He recommended that Shelden form an offshore trust with his assets. The stock certificates thereupon were lodged in a vault in the Mid-Atlantic Bank of New Jersey. A loan was obtained, secured by some of the shares of stock, and two bank accounts of between $30,000 and $40,000 were opened, one in the name of

Shelden and the other in the name of Starchild. Shelden explained the purpose of Starchild's account was "so he would have some money for administering my affairs." Starchild indicated that he was going to form a company specifically for the purpose of administering the trust to be created by Shelden. Shelden then left his securities with Starchild and flew to Europe via Canada and the Bahamas. While in Canada he notified his family by telephone that there may have been a little "problem" and he would be away for a while.

A meeting took place at a house owned by Shelden in Antigua, British West Indies, attended by Shelden, his brother, Alger, Jr., L. Bennett Young and Adam Starchild. There was a general discussion as to how Shelden's assets should be managed. Starchild stated that a trust was essential and recommended an irrevocable trust. Young expressed doubt that a trust was necessary but took the position that in all events an irrevocable trust would be unwise. At the insistence of Young, a revocable trust was decided upon. The trust instrument was signed September 28, 1976 by Francis D. Shelden, Settlor, and The Trust Company of the Virgin Islands, Ltd. by Adam Starchild. The trust instrument was witnessed by Alger Shelden, Jr. and L. Bennett Young. Francis D. Shelden retained the express right to modify or terminate the trust altogether, including the power to remove the trustee and appoint a successor trustee or trustees. On October 9, 1976 Shelden, as Settlor, appointed L. Bennett Young as protector with the concurrent power to remove trustees and appoint successor trustees. Starchild, as director of The Trust Company of the Virgin Islands, Ltd., acknowledged the appointment of Young as protector of the trust. Following the execution of the trust instrument, Shelden returned to Europe.

In December 1976 Starchild reported to Shelden by telephone that the State of Michigan had issued criminal warrants for the arrest of Shelden. Starchild indicated to Shelden that he was coming under scrutiny by the Federal Bureau of Investigation.

In 1977 Shelden requested an accounting from Starchild as to the status of his assets for income tax purposes. Although Starchild had promised Shelden quarterly financial statements, no certified accountings were received throughout 1977. Finally, in 1978, after repeated requests, Starchild sent to Shelden a list of his stock dividends for 1977. Shelden testified that the list was erroneous—that he checked Starchild's figures with his own calculations based on his known securities and a copy of Standard & Poors and found Starchild's figures to be grossly in error. He demanded an accounting. He testified that "I became increasingly concerned. After the beginning of the year I wanted the books closed and I needed a final accounting for tax purposes." He testified that he "kept pestering" Starchild for an accounting of dividends received in 1977; that Starchild kept telling him " 'Oh, the accountants are working on it' " and "that sort of thing. They will have the final figures next Thursday.' " Shelden testified that Starchild "went on for several months and I became increasingly concerned as April 15 drew nearer" .... "I never received anything in written form ... [that] [h]e talked vaguely about having other accounts." Finally, after consulting with a Dutch tax lawyer, Antoon Kasdorp, Shelden decided that the time had come for him to remove The Trust Company of the Virgin Islands as Trustee and appoint a successor trustee. He advised Starchild of this decision by telephone. On April 13, 1978, Shelden executed a document removing The Trust Company of the Virgin Islands as trustee and naming Edward Brongersma as successor trustee. This document was notarized in Amsterdam and complies in all respects with the provisions of the Trust Instru-

ment.[5] Brongersma accepted the appointment the same day.[6]

Shelden testified that Brongersma for many years had been "a Senator, a Dutch equivalent. He was a member of the Upper House of the Dutch Government; was a chairman of the Judicial committee; was a lawyer, doctor of law."

5. The document removing The Trust Company of the Virgin Islands, Ltd. and appointing Brongersma as first successor trustee is as follows:

**REMOVAL OF A TRUSTEE AND APPOINTMENT OF A SUCCESSOR TRUSTEE**

I, FRANCIS D. SHELDEN, Settlor and Sole Beneficiary of the Francis D. Shelden Revocable Inter Vivos Trust dated September 28, 1976 in accordance with the provisions of Article IV, Paragraph 4.5 thereof, do hereby remove The Trust Company of the Virgin Islands, Ltd. of Roadtown, Tortola, British Virgin Islands as Trustee, and do hereby nominate and appoint EDWARD BRONGERSMA, of Tetterodewag 1, Overveen, the Netherlands to act as Successor Trustee of my said Trust.

I hereby invest EDWARD BRONGERSMA, the Successor Trustee, with full powers and authority, to request full account of the original Trustee on all matters related with my said Trust, to discharge upon such rendering of account the original Trustee from all responsibility in relation with my said Trust and to make all necessary arrangements to compensate the original Trustee for his services and reimburse him for all reasonable expenses incurred in the management and conservation of my said Trust Estate.

Dated April 13, 1978

/s/ FRANCIS D. SHELDEN

Seen by me, Mr. Leo Johannes Willem Marie Schroeder, notaris, having his office in Amsterdam, for legalisation of the signature hereabove of Mr. Francis D. Shelden.

Amsterdam, April 13th, 1978.

(Seal)

Signed by L. J. W. M. Schroeder

BRITISH CONSULATE GENERAL AMSTERDAM

Date 13 April, 1978

for the legailisation of the signature and seal (overleaf) of Mr. L. J. W. M. Schroeder, a Notary Public of Amsterdam, the Netherlands.

(Signature not legible)

British Vice-Counsul

Kingdom of the Netherlands )
Province of North Holland )
City of Amsterdam ) SS
Consulate General of the )
United States of America )

---

I, Melvin M. Tano Consul of the United States of America at Amsterdam, The Netherlands, duly commissioned and qualified, do hereby certify that L.J.W.M. SCHROEDER whose true signature and official seal are respectively subscribed and affixed to the annexed document was at the time he signed the annexed document a NOTARY at AMSTERDAM, The Netherlands, to whose official acts faith and credit are due.

IN WITNESS WHEREOF I hereunto set my hand and the seal of the Consulate General of the United States at Amsterdam, The Netherlands, this 13 day of Apr 1978.

/s/ MELVIN M. TANO

Consul of the United States
duly commissioned and qualified

6. **ACCEPTANCE OF APPOINTMENT OF SUCCESSOR TRUSTEE**

I, EDWARD BRONGERSMA, of Tetterodeweg 1, Overveen, the Netherlands, hereby accept my appointment as Successor Trustee of the Francis D. Shelden Revocable Inter Vivos Trust, and hereby accept to possess and exercise all powers and authority conferred on the original Trustee by the said Trust instrument dated September 28, 1976 and conferred on me by the instrument dated 13 April 1978 to appoint me as Successor Trustee.

In his deposition, Antoon Kasdorp stated that he served the papers removing The Trust Company of the Virgin Islands upon Starchild in person April 20, 1978.[7]

Shelden testified that the removal of The Trust Company of the Virgin Islands, Ltd. as trustee was his own decision and his "free and voluntary act."

Shelden further testified that "continuing discussions went on about the administration of the trust and it seemed as though the trustee should be ... in the United States." Accordingly, on October 16, 1979, L. Bennett Young exercised his power as protector of the trust, removed Brongersma as first successor trustee and appointed himself and the Detroit Bank and Trust Company as second successor co-trustees.[8]

Shelden testified that the appointment of Young and the Detroit Bank and Trust

Dated: 13 April 1978

/s/ EDWARD BRONGERSMA
Date 13 April 1978
For the legailsation of the signature and seal (overleaf) of L. J. W. M. Schroeder, a Notary Public of Amsterdam, the Netherlands

(Signature not legible)
British Vice-Counsul

Kingdom of the Netherlands )
Province of North Holland )
City of Amsterdam ) SS
Consulate General of the )
United States of America )

---

I, Melvin M. Tano Consul of the United States of America at Amsterdam, The Netherlands, duly commissioned and qualified, do hereby certify that L.J.W.M. Schroeder whose true signature and official seal are, respectively, subscribed and affixed to the annexed document, was at the time he signed the annexed documents a NOTARY, at AMSTERDAM, The Netherlands, to whose official acts faith and credit are due.

IN WITNESS WHEREOF I hereunto set my hand and the seal of the Consulate General of the United States at Amsterdam, The Netherlands, this 13 day of APR 1978.

/s/ MELVIN M. TANO
Consul of the United States
duly commissioned and qualified

7. The deposition of Antoon Kasdorp is as follows:

Antoon Kasdorp deposes and states as follows:

1. That I am an attorney licensed to practice law at the bar of Amsterdam in The Netherlands and represent Francis D. Shelden.
2. That if called upon to do so, I could testify to the matters stated in this affidavit since they are made from my personal knowledge.
3. That in April 1978 I personally drafted the documents hereinafter described removing the Trust Company of the Virgin Islands, Ltd. as Trustee of the Francis D. Shelden Revocable Inter Vivos Trust, dated 28 September 1976, and appointing Edward Brongersma as Successor Trustee.
4. That Francis D. Shelden personally authorized and commissioned these actions and further instructed me to travel to the United States and personally serve Adam Starchild with the removal documents.
5. That I went to the United States and personally served Adam Starchild with the Removal of Trustee and Appointment of Successor Trustee dated 13 April 1978 and Acceptance of Appointment of Successor Trustee dated 13 April 1978 on 20 April 1978 in the city of New York, N.Y.

Antoon Kasdorp
Amsterdam,

The undersigned,
Meester Leo Johannes Willem Marie Schroeder, notaris with office in Amsterdam,
declares that the signature on the reverse side is the signature of Meester Antoon Kasdorp, a lawyer in Amsterdam, who has solemnly affirmed before me, notaris, that his statement is the truth, the whole truth and nothing but the truth.
Amsterdam, April 1, 1982

(seal)

(signature)

8. **REMOVAL OF TRUSTEE AND APPOINTMENT OF SUCCESSOR TRUSTEES**

I, L. BENNETT YOUNG, Protector of the Francis D. Shelden Revocable Inter Vivos Trust dated September 28, 1976, in accordance with the authority vested in me by the Appointment of the Settlor, Francis D. Shelden, dated October 9, 1976, a copy of which is attached hereto, and in accordance with the authority vested in me by virtue of the provisions of Article IV, Section 4.2 of said Trust, do hereby remove Edward Brongersma of Tetterodeweg 1, Overveen, The Netherlands, as Successor Trustee and do hereby designate and appoint L. BENNETT YOUNG of 877 South Adams Road, Birmingham, Michigan 48011, and The Detroit Bank & Trust Company of Detroit, Michigan, as Successor Trustees, hereby vesting said Successor Trustees

Company as second successor trustees was done with his approval and consent. He ratified the appointment in writing.[9]

Brongersma acknowledged his removal as first successor trustee.[10] The signature and seal of the L.J.W.M. Schroeder, notary, were duly verified by Robert E. Sorenson, United States Vice Consul.

Brongersma also executed the affidavit quoted in the note.[11] The signature and seal of the Notary were duly verified.

Shelden further testified as follows:

with full authority to do and perform every act and to exercise every power as Trustees permitted or granted by the Trust Instrument.

I hereby specifically recognize the removal by the Settlor of the original Trustee, The Trust Company of the Virgin Islands, Ltd. and the appointment of Edward Brongersma as Successor Trustee by instrument dated April 13, 1978, a copy of which is attached hereto.

/s/ L. BENNETT YOUNG

Witnesses:
/s/ DAVID C. WIND
/s/ WILLIAM G. BUTLER

STATE OF MICHIGAN )
) SS
COUNTY OF WAYNE )

Subscribed and sworn to before me this 16th day of October, 1979.

Anastasia D. Lacen
Notary Public, Wayne County, Mich.
My Commission expires June 20, 1983

### 9. SETTLOR'S ACKNOWLEDGEMENT OF REMOVAL OF TRUSTEE AND APPOINTMENT OF SUCCESSOR TRUSTEES

I hereby acknowledge and affirm the removal of EDWARD BRONGERSMA as Successor Trustee of my Revocable Inter-Vivos Trust dated September 28, 1976, by the action of L. BENNETT YOUNG, Protector of my said Trust, by written instrument dated October 16, 1979, and I further accept and affirm the appointment by the said Protector of my said Trust of L. BENNETT YOUNG and THE DETROIT BANK & TRUST COMPANY, as Successor Trustees with all powers and authority granted to them by the said written instrument dated October 16, 1979, and under the provisions of my said Trust.

/s/ FRANCIS D. SHELDEN

Dated: 13 November, 1979.
Witnesses:
/s/ (signature not legible)
/s/ (signature not legible)
Seen by me, Meester Leo Johannes Willem Marie Schroeder, notaris with office in Amsterdam for legalisation of the signatures hereabove of Mr. Francis Duffield Shelden, Mr. Hendricus Marinus van der Schroeff and Miss. Petronella Hendrica Cornelia Maria Perguin, all of them are known to me.
Amsterdam, 16th November 1979.

(signature)

(seal)

### 10. ACKNOWLEDGEMENT OF REMOVAL OF SUCCESSOR TRUSTEE

I, EDWARD BRONGERSMA, of Tetterodeweg 1, Overveen, The Netherlands, hereby acknowledge and accept my removal as Successor Trustee of the Francis D. Shelden Revocable Inter-Vivos Trust dated September 28, 1976, by the action of L. BENNETT YOUNG, Protector of said Trust, by written instrument dated October 16, 1979.

/s/ EDWARD BRONGERSMA

Dated: 13 Nov. 1979
Witnesses:
/s/ (signature not legible)
/s/ (signature not legible)
Seen by me, Meester Leo Johannes Willem Marie Schroeder, notaris with office in Amsterdam for legalisation of the signatures hereabove of Mr. Edward Brongersma, Mr. Hendricus Marinus van der Schroeff and Miss. Petronella Hendrica Cornelia Maria Perguin, all of them are known to me.
Amsterdam, 16th November 1979.

(signature)

(seal)

11. Edward Brongersma deposes and states as follows:

1. That I reside at Tetterodeweg 1, Overveen, The Netherlands.

2. That on 13 April 1978 I was appointed and accepted the appointment of Successor Trustee of the Francis D. Shelden Revocable Inter Vivos Trust dated 28 September 1976.

3. That on 13 April 1978 I executed a document entitled Acceptance of Appointment of Successor Trustee.

4. That on 16 November 1979 I executed a document entitled Acknowledgment of Removal of Successor Trustee and accepted my removal as Successor Trustee by action of L. Bennett Young as Protector of said Trust.

5. That at no time have I received any assets or property of any nature whatsoever belonging to said Trust from the Trust Company of the Virgin Islands, Ltd. Adam Starchild or any other person connected with said Trust.

6. That at no time have I ever received an accounting from the Trust Company of the Virgin Islands, Ltd. of its activities as my predecessor Trustee nor have I ever received such an accounting from Adam Starchild or any other person connected with said Trust.

/s/ EDWARD BRONGERSMA
Amsterdam,

Q. Now, was Mr. Starchild to do anything regarding the assets when he was removed?

A. Yes. The understanding was that upon his removal, he would do two things: He would provide a final accounting, of course, and he would render the assets to a representative for the successor trustee.

Q. Well, what did Mr. Starchild do after he was served with the removal papers?

A. He did nothing.

Q. When you say he did nothing, did he turn any assets over to Mr. Brongersma?

A. No.

Q. Any representative of Mr. Brongersma?

A. No.

Q. Anything to Mr. Kasdorp?

A. No.

Q. Anything to you?

A. No.

Q. Did he give you an accounting?

A. No.

Q. Did there come a time when Mr. Young got more in the foreground?

A. Yes, yes definitely, later.

Q. All right.

When did that happen?

A. That happened as continuing discussions went on about the administration of this trust, and it seemed as though the trustee should be, should be an American, or it should be in the United States.

Q. All right, and did Mr. Young, at some point, indicate something to you about this situation?

A. Yes. Well, he exercised his power as Protector of the trust, later, to have Edward Brongersma removed and appointed himself and the Detroit Bank & Trust Company as trustees.

Q. All right.

Was Mr. Young's actions done with your prior knowledge?

A. Yes, I believe so.

Q. And was it done with your prior consent?

A. Certainly with my consent.

Q. All right.

Let me show you, Mr. Shelden, what's been marked as your Deposition Exhibit No. 5, and ask you if you can identify that for us, please?

A. Yes. This is an instrument which removed Edward Brongersma as successor trustee and appoint L. Bennett Young and the Detroit Bank & Trust Company of Detroit as the new successor trustee.

Q. All right.

Did you receive a copy of this document shortly after the date it appears, which is October 16, 1979?

A. Yes.

Q. All right, and was this in accordance with your understanding of what Mr. Young was going to do?

A. Yes.

Q. All right.

Now Mr. Shelden, let me show you what's been marked as Shelden Deposition Exhibit No. 6, and see if you can identify that for us, please?

A. Yes; Settlor's Acknowledgment of Removal of Trustee and Appointment of Successor Trustees. This is a document which I signed, executed here, and acknowledged here in Amsterdam, notarized here, in which I acknowledged that I concurred with and knew about the appointment of the successor trustees.

Q. Is that your signature, by the way?

A. Yes, it is.

Q. And by the way, did you do this freely and voluntarily?

A. Yes, certainly.

Q. And you knew what you were doing?

A. Yes.

Q. All right.

I'd like to show you Shelden Deposition Exhibit No. 7, and see if you can identify that for me, please?

A. Yes. This is the Acknowledgment of Removal of Successor Trustee in which Edward Brongersma acknowledged that he was being removed as successor trustee.

Q. All right, and did Mr. Brongersma sign this in your presence?

A. Yes, he did.

Q. Okay.

No one forced Mr. Brongersma to sign this document?

A. No, no.

Q. All right.

Let me show you a document which has been marked Shelden Deposition Exhibit No. 8, and see if you can identify that for me?

A. Yes. This is a document in which L. Bennett Young and David C. Wind, acting on behalf of Detroit Bank & Trust Company accepts their appointment as successor trustee.

Q. All right, and you received a copy of this document?

A. Yes.

Q. And did that comport with your understanding of the situation?

A. Yes, it certainly did.

Q. And did you agree with it?

A. Yes.

　　　*　　　*　　　*

But, the next thing I learned was that a couple representatives from the trust company of the Virgin Islands had presented themselves to the Detroit Bank & Trust where some of the assets from—of mine were lodged—

Q. Let me see, are you sure at Detroit Bank & Trust?

A. Excuse me, I'm sorry, it was the National Bank of Detroit.

Q. And do you recall how you were informed of this?

A. I don't recall, specifically, right now. It was some—it was, perhaps—it was from Bennett Young, but I'm not absolutely certain.

Q. Can you recall whoever told you, what in essence the conversation was?

A. Yes. Two representatives—two people had presented themselves at the National Bank of Detroit demanding where the assets—from my incorporations were.

Q. Now, this is the perfect time, I think, to ask you something about this.

Do you recall what corporate assets were at the National Bank of Detroit, at this time?

A. There was cash from two corporations.

Q. All right.

Do you recall the name of the corporations?

A. Yes; the Windigo Ranch Corporation and the FDS Corporation.

Q. Let's back in a bit in time. Do you recall when FDS and Windigo were formed?

A. Yes; they were formed at or very shortly after our meeting in Antigua, in October of 1976.

Q. Okay.

Do you recall who formed those two corporations?

A. Yes. I—

Q. Who did the legal work, I should say?

A. Yes; Bennett Young did.

Q. Okay, and do you recall what the purpose of FDS was for?

A. FDS was to receive the assets and the cash as it came in for the property that I held jointly with the estate of John Wreford and his wife in Charlevoix.

Q. Was it in developed land in Charlevoix?

A. Yes; Charlevoix County.

Q. It was the intent to gradually sell that land off?

A. Yes.

Q. And what—

A. We'd been involved in that before I left the United States, selling the land.

\* \* \*

Q. Could I, could I do this, Mr. Shelden, could you pick up Exhibit 1 which is the Francis D. Shelden Revocable Trust, turn to the last page, please?

A. Yes.

Q. Does that refresh your recollection?

A. Yes. One thousand shares Windigo; one thousand shares FDS Land Company.

Q. Now, who was to be the owner of those shares of stock, at least September 28th, '76?

A. I would have to ask you what you mean by owner?

Do you mean—

Q. It was transferred, was it not, to the trust?

A. Yes, it was transferred.

Q. All right.

Now, when, when you removed the trust company in 1978—

A. Yes.

Q. —was it your intention also, to transfer ownership of those shares of stock to your successor trustee?

A. Yes, of course.

Q. All right, and did Mr. Starchild comply with your request to do that?

A. No, he certainly did not.

Q. All right, and when we go to 1979, when Mr. Young and Detroit Bank & Trust Company are appointed as second successor company trustee, what was your intention regarding those stocks?

A. Well, it would, like everything else, it would go to Mr. Young and Detroit Bank & Trust Company as trustees.

\* \* \*

Q. Regarding FDS and Windigo, was it your intention, in 1978, that your first successor trustee, Mr. Brongersma own all the shares of stock in that—in those two?

A. Yes, it was, as trustee.

Q. Right, and in 1979, what was your intention regarding those two corporations?

A. That as trustee, the assets in those two corporations be owned by Mr. Young and the trust company, Detroit Bank & Trust Company.

Q. Okay.

Today, March 31, 1982, who do you consider to be the valid trustees of your trust, Mr. Shelden?

A. The valid trustees of my trust are L. Bennett Young and the Detroit Bank & Trust Company.

Q. And who do you claim are the proper owners of stock in FDS Land and Windigo Ranch Corporation?

A. L. Bennett Young and the Detroit Bank & Trust Company.

Q. And who would be entitled to the funds in the bank account and forms the base of this action, Mr. Young?

A. L. Bennett Young and the Detroit Bank & Trust Company.

Q. Are you aware, Mr. Shelden, of your fugitive status in the United States?

A. Yes.

Q. Are you aware of the fact what Mr. Young and Detroit & Trust Company's position is with regard to transferring assets to you?

A. Yes; they absolutely cannot do that.

Q. And you recognize that?

A. Yes.

Q. You recognize you'll not receive assets from Detroit Bank & Trust Company and Mr. Bennett as long as you're a fugitive?

A. Yes, I recognize that.

Q. And you still wish them to be your trustees?

A. Yes, I do.

Q. Mr. Shelden, in all the—by the way, what was the last communication of any kind that you had with Mr. Starchild?

A. Well, I mentioned that I had received word that two people, saying that

they were representatives of the Detroit— representing the trust company of the Virgin Island had presented themselves to National Bank of Detroit and demanded all the cash that was there.

This worried me very much. I sent a letter to Starchild saying "I find this action absolutely inexplicable, I await your explanation," and I received from him, I believe, the last—in 1978, the last communication that I had from him, the telegram he sent to me saying, "I suggest you telephone me, there's lots of room for negotiation."

Q. And what did you say?

A. I wrote him back at that point, and said "There is no room for negotiation, I demand an accounting. And any further communication between you and me shall be carried on with my lawyers."

Q. All right, and from 1976 until this last communication, did you deal with anyone else associated with The Trust Company of the Virgin Islands Limited other than Adam Starchild?

A. Essentially, no. The trust company of the Virgin Islands was Adam Starchild's alter ego.

## V.

■ As stated in the opening paragraph of this opinion, the issue of fact in this interpleader action is who are the present trustees of the Shelden trust. The evidence summarized above, including both authenticated documents and the testimony of Francis D. Shelden in his deposition *de bene esse*, demonstrates that the two successor trustees are the duly qualified trustees of the trust. We hold that Judge Joiner did not err in finding that no genuine issues of material fact existed on this question and in granting the motion for summary judgment.

Appellants contend that too many disputed factual questions remain in the case to permit summary judgment. The Trust Company of the Virgin Islands, Ltd. places strong reliance on an unauthenticated document entitled "ADDENDUM TO FRANCIS D. SHELDEN INTER VIVOS TRUST" bearing the date of April 24, 1978. This allegedly was written eleven days after Shelden had removed The Trust Company of the Virgin Islands, Ltd. as trustee and Edward Brongersma had accepted appointment as first successor trustee in full compliance with the trust instrument as detailed above. The "Addendum" is dated four days after Antoon Kasdorp, according to his affidavit, personally served Starchild with the removal papers on April 20, 1978. The "Addendum" purported to "nominate, constitute and appoint the Trust Company of the Virgin Islands" as trustee of the "Trust*s*, hereinabove created" (emphasis supplied), without bond or "if a bond is required by law it be nominal in amount." The "Addendum" provided that the British Virgin Islands would be the "situs of the trust" and that "This Trust shall be governed by and construed in accordance with the laws of the British Virgin Islands." It bears purported signatures (which are virtually illegible) over the typed name of "Francis D. Shelden, Settlor" and Adam Starchild for the Trust Company of the Virgin Islands. It is not witnessed, notarized or otherwise authenticated. The date, April 24, 1978, is typed and not authenticated. It could have been inserted at any time. Judge Joiner correctly concluded that the discovery evidence relied upon by Appellants was not sufficient to create any genuine issue of material fact as to the removal of the Trust Company of the Virgin Islands as trustee on April 13, 1978, as testified by Shelden and established by verified documents in the record.

Appellants further contend that the evidence raises serious questions of fact as to whether the Settlor established the trust for an illegal purpose. This is irrelevant to the resolution of the issues raised by the interpleader complaint. The question of the purpose of the trust is not before the Court in this case. We reemphasize that the only genuine issue of material fact presented by the complaint is who are the present trustees of the trust. Even if it be concluded that the trust was established for an illegal purpose, that would not make

the Trust Company of the Virgin Islands the present trustee.

Appellants further contend that, because of the illegality of the trust, the Trust Company of the Virgin Islands is entitled to retain all the assets originally transferred to the trustee. This contention likewise is unsupported by the record and is irrelevant to the resolution of the issues raised by the interpleader complaint.

We note that there is nothing in the language of the trust instrument that raises the slightest suspicion of illegality. Furthermore, with respect to Appellants' contention that the trust was created for an illegal purpose, we note that the idea of creating the trust did not originate with Shelden. It was created upon the recommendation and urging of Starchild, who organized the Trust Company of the Virgin Islands for the purpose of administering it.

In another effort to establish the existence of a genuine issue of material fact, Appellants assert that L. Bennett Young, who in his capacity as protector of the trust, removed Brongersma as first successor trustee and appointed himself and the Detroit Bank and Trust Company as second successor trustees, executed a resignation as protector of the trust in 1977 or 1978. This assertion is based upon a deposition given by Young in the case of *Shelden v. Trust Company of the Virgin Islands, Ltd.*, in which the opinion of the district court of Puerto Rico is published in 535 F.Supp. 667 (D. Puerto Rico 1982).[12]

Appellants' contention that Young resigned as protector of the trust is contradicted by Young's deposition. Young testified that Shelden suggested that he, Young, write letters to newspaper editors, hold a press conference or appear on television to correct untrue news stories then being published about Shelden. Young said that his own judgment was to do nothing about the newspaper articles because to respond to them might cause more articles and more publicity. Therefore, Young declined to engage in a publicity campaign

on behalf of his client and tendered his resignation as Shelden's attorney if Shelden desired to accept it. Young testified that Shelden refused to accept his resignation and destroyed Young's letter. That no resignation of Young ever occurred, whether as attorney for Shelden, protector of the trust or second successor trustee of the trust, is made clear by Shelden's deposition as well as the deposition of Young when read in its entirety.

Furthermore, the District Court of Puerto Rico, in the case in which Young's deposition was taken, did *not* hold that Young had resigned as protector of the trust. In *Shelden v. Trust Company of the Virgin Islands, Ltd., supra,* 535 F.Supp. 667,[13] District Judge Cerezo authorized Young and the Detroit Bank and Trust Company to be added as plaintiffs in that action in their role as successor trustees of the trust.

District Judge Cerezo made the following finding as to the role of L. Bennett Young under the provisions of the Shelden Trust:

When the trust was created, Shelden vested Young with all powers belonging to him, including the power of removal of the trustee and designation of successor trustees, prohibiting him only from revoking or modifying the trust. The Trust Company, acting trustee, acknowledged in writing both receipt of his appointment and of his authority as set forth in the trust and in the appointment of protector. According to the powers and the functions assigned to the protector in the trust instrument, it can reasonably be said that he acts as a representative of the settlor-sole beneficiary and as guardian of his interests in the trust. He acts in a fiduciary capacity for the settlor as sole beneficiary of the trust. The protector is not a party who has been brought to this litigation in a collusive manner to create diversity jurisdiction which otherwise would not exist. His existence and authority was acknowl-

---

**12.** See Part VI of this opinion, *infra.*

**13.** See Part VI of this opinion, *infra.*

edged by defendants since 1976. He is a person with strong ties to the trust since its creation who was assigned powers and functions and who accepted the duties imposed upon him. His authority emanates from the trust instrument itself. Having acknowledged his authority to act as protector of the trust, defendants cannot now complain when he discharges the duties delegated to him as such. He is a party with real interest in the trust and in the accounting sought. 535 F.Supp. at 671.

Appellants make the further argument that the trust instrument should be construed according to the law of the British Virgin Islands, and not by the law of Michigan. No law of the British Virgin Islands is cited that would change the decision of Judge Joiner as to the identity of the present trustees of the trust.

We conclude that the provisions of the trust instrument for removing trustees and appointing new trustees are too clear and unambiguous to require application of rules of construction, whether under the law of Michigan or the law of the British Virgin Islands.

We hold that Appellants have failed to establish any genuine issue of material fact as to the identity of the trustees now entitled to administer the trust. A factual dispute about immaterial matters does not bar summary judgment.

Appellants have failed to establish any issue of *material* fact as to the identities of the trustees. "[A]ll that is required [of non-movant] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968) *reh'g. denied* 393 U.S. 901, 89 S.Ct. 63, 21 L.Ed.2d 188 (1968); *Bouldis v. U.S. Suzuki Motor Corp.*, 711 F.2d 1319 (6th Cir.1983). This Appellants have failed to do. The purpose of summary judgment is to eliminate a trial where it would be unnecessary and result in mere delay and expense, *Su-*

*zuki Motors, supra*, 711 F.2d at 1324. If the record evidence is not disputed as to any *material* fact, the case should be decided as a matter of law rather than submitted to a jury. *Id.* (emphasis supplied). Here, the purported issues of fact asserted by the Appellants were not material to the disposition of the ultimate issue, namely who were the proper trustees to the Shelden trust, and thus entitled to the monies paid over by the National Bank of Detroit to the Clerk of the District Court for the Eastern District of Michigan. Therefore, we hold that Judge Joiner did not err in granting summary judgment in favor of the second successor co-trustees, L. Bennett Young and the Detroit Bank and Trust Company.

## VI.

The summary judgment granted by Judge Joiner in the present case is supported by the decision of the District Court of Puerto Rico in *Francis D. Shelden, as Settlor of the Francis D. Shelden Revocable Inter-vivos Trust, and L. Bennett Young, Esq., as Protector of the Trust, v. The Trust Company of the Virgin Islands, Ltd., and Adam Starchild, Individually and as Director and Trustee, supra*, 535 F.Supp. 667 (D. Puerto Rico 1982). The action was filed by Shelden and L. Bennett Young, the latter in his capacity as protector of the Shelden Trust. Defendant Starchild was served with process in Puerto Rico on August 9, 1978. Shelden and Young sought relief against The Trust Company of the Virgin Islands, Ltd. and Starchild for breach of trust, alleging that the trustee failed to perform the trust duties. Plaintiffs sought an accounting in accordance with the provisions of the trust instrument, full disclosure of defendants' financial activities, removal of the acting trustee and a transfer of the corpus of the trust to a successor trustee "so that the same can be preserved and administered within the jurisdiction and under the laws of the United States." 535 F.Supp. at 668.

Thereafter L. Bennett Young and the Detroit Bank and Trust Company filed a

motion to be added as plaintiffs in their capacities as successor trustees of the Shelden trust.

The district court held that Shelden could not maintain the action because he was not domiciled in Michigan at the time the complaint was filed, and had no intention of ever reestablishing a Michigan domicile, and was no longer a citizen of the United States; and that an action could not be maintained between a noncitizen plaintiff and a noncitizen defendant.

District Judge Cerezo concluded, however, that Shelden is not an indispensable party; and that Young, as protector of the trust, and Young and the Detroit Bank and Trust Company as successor trustees, can maintain the action against the former trustee and Starchild. Young and the bank were admitted as plaintiffs in their role as successor trustees.

With respect to its jurisdiction, the district court pointed out that "during the years 1977–78 Starchild may have conducted the bulk of the Trust Company's affairs from Puerto Rico and, as its agent, availed himself of the privilege of conducting business within the forum state;" and that "Starchild wrote Shelden twenty-six letters and aerograms from San Juan and was sent twenty-seven letters by Shelden to his San Juan address and that he [Starchild] sent Shelden cables from San Juan and phoned him several times from here." 535 F.Supp. at 669.

■ The following quotation from the opinion of District Judge Cerezo is especially pertinent to the present litigation:

Furthermore, and perhaps more important, is the fact that the trust instrument gave Shelden, as sole beneficiary, and Young, as protector, the right to remove the trustee and to designate his successor. There was no provision requiring them to seek approval of the court in the event of removal of the trustee. In the exercise of the powers vested in them by the trust itself, the acting trustee was removed and a successor trustee designated. Subsequently, and again in the exercise of their powers, that successor trustee was removed and other successor trustees appointed, namely, L. Bennett Young who originally filed suit as co-plaintiff of protector and The Detroit Bank and Trust Company. Defendants have not shown any legal impediment to the exercise of that power by the settlor-beneficiary and/or the protector. There is no reason to believe that the removal of the defendant trustee and the subsequent designation of the successor trustees is not a legitimate exercise of those powers. This action is essentially a proceeding seeking an accounting of the defendant trustee and successor trustees can bring accounting proceedings against the original trustee who has allegedly committed wrongdoing in the administration of the trust.

Successor trustees having been designated and having requested the Court to allow them to appear as plaintiffs, we must now determine if the action can be prosecuted by them in the absence of Mr. Shelden who has been found to be a party not domiciled in the State of Michigan but in Europe and whose presence destroys diversity jurisdiction. Since the trust deed invests the protector with full authority to exercise the rights reserved to the settlor-beneficiary since its creation and since the successor trustees have been designated in accordance with the provisions of the trust instrument, they are empowered as such successor trustees to continue this action. Shelden's presence in the litigation is neither necessary nor indispensable for the trustees can demand an accounting from the original trustee and can sue to protect and preserve the trust capital. Neither Young, as protector, nor the successor trustees are straw parties to this action. Both the protector and the successor trustees are available to testify and to be deposed and there is complete diversity between them and defendants. Were we to conclude that the successor trustees and/or the protector cannot initiate this action despite their capacity to do so and their interest in the trust, we would in

effect be holding that because the settlor of a trust is a fugitive the successor trustees cannot have access to the courts to hold liable the wrongdoing trustee. Even if the settlor were convicted, the successor trustees could institute accounting proceedings against the original trustee. Although Shelden's fleeing the jurisdiction to avoid prosecution is an illegal and an offensive action, the Court having previously exercised *in personam* and subject matter jurisdiction, cannot now close the door to the protector or to the successor trustees of the trust to seek an accounting for alleged acts of mismanagement and breach of trust by the predecessor trustee.

Having concluded that Shelden is not an indispensable party and that the successor trustees have a legitimate and real interest in the trust, the Court cannot dismiss this action.
535 F.Supp. at 672.

### VII.

The contentions of Appellant, The Trust Company of the Virgin Islands, Ltd., are without merit for the reasons stated above. The contentions of Appellant Peter J. Cipollini are without merit because he no longer is an officer of FDS Land Company or Windigo Ranch, Inc. The stock in both corporations is owned by L. Bennett Young and Detroit Bank and Trust Company, successor trustees of the Shelden Trust.

The summary judgment of the district court is affirmed. The costs of these appeals are taxed against Appellants.

### APPENDIX No. 1
### FRANCIS D. SHELDEN REVOCABLE INTER VIVOS TRUST

THIS TRUST is executed this 28th day of September, 1976, by and between FRANCIS D. SHELDEN, hereinafter referred to as the Settlor, and THE TRUST COMPANY OF THE VIRGIN ISLANDS, LTD., hereinafter referred to as the Trustee.

WHEREAS, Settlor, desiring to create a trust to be known as the FRANCIS D. SHELDEN REVOCABLE INTER VIVOS TRUST for the purposes hereinafter set forth, does hereby transfer, assign, convey, and deliver to the Trustee the property described in Schedule A attached hereto and made a part hereof, and

WHEREAS, it is Settlor's intention that said property, together with such other property as may be added thereto from time to time, be held in Trust for the benefit of Settlor and others,

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein contained, it is agreed as follows:

### ARTICLE I
### ADMINISTRATION DURING LIFETIME OF SETTLOR

All of the income, if any, from this Trust shall be distributed to or for the benefit of Settlor during his lifetime, at least quarterannually. Settlor may withdraw any amount or all of the principal of this Trust from time to time.

### ARTICLE II
### ADMINISTRATION FOLLOWING DEATH OF SETTLOR

Upon Settlor's death:

(Section 2.1 makes specific gifts of tangible personal property.)

2.2 **Specific Gifts.** My Trustee shall pay over forthwith free of the Trust the following sums to the following named institutions and associations:

(A) The sum of Twenty-five Thousand Dollars ($25,000.00) to YALE UNIVERSITY New Haven, Connecticut.

(B) The sum of Five Thousand Dollars ($5,000.00) to CRANBROOK INSTITUTE OF SCIENCE, Bloomfield Hills, Michigan.

(C) The sum of Ten Thousand Dollars ($10,000.00) to THE UNIVERSITY OF MICHIGAN, Ann Arbor, Michigan.

(D) The sum of Ten Thousand Dollars ($10,000.00) to WAYNE STATE UNIVERSITY, Detroit, Michigan.

(E) The sum of Five Thousand Dollars ($5,000.00) to THE AMERICAN ASSOCI-

ATION OF PETROLEUM GEOLOGISTS of Tulsa, Oklahoma, for the Publication Fund.

(Sections 2.3 and 2.4 establish education trusts for Joseph William Moore and Barry Del Wood of Charlevoix, Michigan.)

(Section 2.5 provides for the distribution of the residue to the children or grandchildren of Alger Shelden, Jr., brother of Francis D. Shelden, who survive the settlor.)

(ARTICLE III sets forth the powers of the Trustee.)

## ARTICLE IV

### TRUSTEE

**4.1. Appointment of Trustee.** I hereby nominate, constitute and appoint THE TRUST COMPANY OF THE VIRGIN ISLANDS, LTD. of Roadtown, Tortola, British Virgin Islands to act as Trustee of the Trusts hereinabove created; and I request that it be permitted to act without bond or if a bond be required by law that it be nominal in amount.

**4.2. Appointment of Protector.** Settlor may by instrument in writing delivered to the Trustee designate a Protector of the Trust who shall have the authority to do and perform every act and to exercise every power vested in or reserved to Settlor in his place and stead as fully as Settlor might do, including the removal of the Trustee and the designation of a successor Trustee, except that such Protector shall not revoke, amend or otherwise modify the provisions of the Trust.

(Section 4.3 provides for termination of Trustee in event of insolvency and other contingencies.)

(Section 4.4 provides for Trustee's right to resign.)

**4.5. Removal of Trustee.** The income beneficiary, or a majority of the income beneficiaries, may, by instrument in writing delivered to the then acting Trustee, remove said Trustee and replace it with a Successor Trustee of his or their choice. Such Successor Trustee shall possess and exercise all powers and authority herein conferred on the original Trustee.

**4.6. Acts of Prior Trustee.** No Successor Trustee hereunder shall be held liable or responsible in any way for the acts or omissions of a predecessor Trustee, but shall be liable only for his own acts or omissions with respect to property received or distributed by him as Trustee.

**4.7. Trustee Accountability.** Settlor, any income beneficiary or person with a remainder interest, whether vested or contingent, shall have access to the books and records of any Trustee, other than Settlor, during normal business hours. Trustee shall account at least annually for all receipts and disbursements to all income beneficiaries.

**4.8. Trustee Compensation.** The Trustee shall be entitled to receive fair and just compensation for its services hereunder and shall be reimbursed for all reasonable expenses incurred in the management and conservation of the Trust estate. The Trustee is also authorized to employ agents, legal counsel, accountants or brokers and to pay them fees and expenses as it may be necessary or advisable to carry out the provisions of this Trust.

## ARTICLE V

### POWERS RETAINED BY SETTLOR

5.1 Settlor or any other person may at any time add any property to this trust, transferring by Will or otherwise. Settlor reserves the right to amend, modify or revoke this Trust Agreement, in whole or in part and at any time or times, by notice in writing to Trustee, and such amendment, modification or revocation shall be effective immediately upon delivery of such notice to Trustee, except that changes with respect to Trustee's duties, liabilities or compensation shall not be effective without its consent. Upon Settlor's death, this trust shall become irrevocable.

(ARTICLE VI contains standard Spendthrift and Rule Against Perpetuities provisions.)

IN WITNESS WHEREOF, this instrument has been executed the day and year first above written.

/s/ FRANCIS D. SHELDEN, Settlor
THE TRUST COMPANY OF THE
VIRGIN ISLANDS, LTD.
By: /s/ ADAM STARCHILD

Witnesses:

/s/ ALGER SHELDEN, JR.

/s/ L. BENNETT YOUNG

Trust Company of the Virgin Islands Ltd. has received from Francis D. Shelden the following securities, as part of the Francis D. Shelden Inter Vivos Trust dated 28th September, 1976.

| | |
|---|---|
| 5929 shares | Detroitbank Corporation |
| 1769 shares | First National Bankshares of Florida Inc. |
| 1620 shares | J.P. Morgan & Co., Inc. |
| 15800 shares | Hiram Walker Goderham & Worts Ltd. |
| 2230 shares | Standard Oil Co. of California |
| 200 shares | Minnesota Mining & Manufacturing |
| 2510 shares | The Murray Ohio Manufacturing Co. |
| 236 shares | Walter Kidde Co., Inc. |
| 2080 shares | Federal Mogul Corp. |
| 100 shares | Burlington Northern Inc. |
| 800 shares | Booth Newspapers Inc. |
| 400 shares | Booth Newspapers Inc. |
| 1000 shares | Mobil Oil Corp. |
| 10014 shares | The Dow Chemical Corp. |
| 3520 shares | Ex-Cell-O Corp. |
| 2654 shares | Marathon Oil Corp. |
| 1830 shares | National Distillers and Chemical Corp. |
| 1118 shares | Texaco Inc. |
| 200 shares | Sears, Roebuck & Co. |
| 1636 shares | Exxon Inc. |
| 450 shares | Borden Inc. |
| 40000 shares | North Fox Island Company |
| 1000 shares | Windigo Ranch, Inc. |
| 1000 shares | FDS Land Company |

Dated this 28th day of September, 1976.
TRUST COMPANY OF THE VIRGIN ISLANDS LTD.
BY: /s/ ADAM STARCHILD
Director

## APPOINTMENT OF PROTECTOR

I, FRANCIS D. SHELDEN, Settlor of the Francis D. Shelden Revocable Inter Vivos Trust dated September 28, 1976, in accordance with the provisions of Article IV, Paragraph 4.2 thereof, do hereby designate and appoint L. Bennett Young of 877 S. Adams, Birmingham, Michigan, U.S.A. as Protector of my said Trust, hereby vesting in him the specific authority to do and perform every act and to exercise every power vested in or reserved to me as Settlor of said Trust as fully as I might do, including the removal of the Trustee and the designation of a Successor Trustee, except that such Protector shall not revoke, amend or otherwise modify the provisions of the Trust.

Dated: October 9, 1976
/s/ FRANCIS D. SHELDEN

Witnesses:

/s/ ALGER SHELDEN, JR.

/s/ ADAM STARCHILD

## ACKNOWLEDGEMENT OF APPOINTMENT OF PROTECTOR

The Trust Company of the Virgin Islands, Ltd., Trustee under the Francis D. Shelden Revocable Inter Vivos Trust dated September 28, 1976, does hereby acknowledge receipt of the appointment of L. Bennett Young as Protector of said Trust and does hereby specifically acknowledge his authority as set forth in said Trust and in the foregoing Appointment of Protector.

Dated: October 9, 1976
The Trust Company of the
Virgin Islands, Ltd.
By: /s/ ADAM STARCHILD

Witnesses:

/s/ ALGER SHELDEN, JR.

/s/ L. BENNETT YOUNG

## ACCEPTANCE OF APPOINTMENT OF PROTECTOR

I, L. BENNETT YOUNG, of 877 S. Adams, Birmingham, Michigan, U.S.A. do hereby accept my appointment as Protector of the Francis D. Shelden Revocable Inter Vivos Trust.

Dated: October 9, 1976
/s/ L. BENNETT YOUNG

Witnesses:

/s/ ALGER SHELDEN, JR.

/s/ ADAM STARCHILD

### APPENDIX No. 2
### UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF MICHIGAN

### SOUTHERN DIVISION

Hon. Charles W. Joiner

Action No. 79–60003

NATIONAL BANK OF DETROIT
                                    Plaintiff,
                vs.
FRANCIS D. SHELDEN, et al.,
                                    Defendants.

[Filed August 20, 1982]
### FINDINGS OF FACT AND CONCLUSIONS OF LAW

Intervening Defendants, Second Successor Co-Trustees, L. Bennett Young and Detroit Bank and Trust Company, having filed a Motion for Summary Judgment Pursuant to Rule 56 of the Federal Rules of Civil Procedure, and Defendant, The Trust Company of the Virgin Islands, Ltd., having filed an Answer and Brief in Opposition thereto, and the matter having come on for hearing in open Court with oral argument thereon, and the Court having granted said Motion from the bench, the Court hereby specifically determines and finds the following:

1. That on September 28, 1976, Francis D. Shelden, the Settlor, executed a revocable inter vivos trust agreement.

2. That in said trust agreement, The Trust Company of the Virgin Islands, Ltd. was named as trustee and received a large quantity of assets which included, *inter alia*, one thousand (1,000) shares of Windigo Ranch, Inc. and one thousand (1,000) shares of FDS Land Company.

3. That the one thousand (1,000) shares of FDS Land Company and the one thousand (1,000) shares of Windigo Ranch, Inc. continue to be assets of the trust and represent all of the outstanding shares of stock in said corporations.

4. That the shares of stock in FDS Land Company and Windigo Ranch, Inc. are legally controlled by the lawful and proper trustees.

5. That on October 9, 1976, the Settlor, Francis D. Shelden, appointed L. Bennett Young as the protector of the trust.

6. That the trust agreement gave both the Settlor and the protector of the trust the express authority to remove trustees and appoint successor trustees.

7. That on April 13, 1978, the Settlor removed The Trust Company of The Virgin Islands, Ltd. in accordance with his powers as set forth in the trust agreement and appointed a successor trustee, Edward Brongersma.

8. That on April 20, 1978, Adam Starchild, on behalf of The Trust Company of the Virgin Islands, Ltd., was personally served with removal papers in New York City.

9. That on October 16, 1979, L. Bennett Young, as protector of the trust, appointed himself and Detroit Bank and Trust Company as Successor Co-Trustees under the terms of the trust agreement and removed Edward Brongersma as successor trustee.

10. That on March 31, 1982, the Settlor, pursuant to a *de bene esse* deposition taken pursuant to Court order, reaffirmed that his lawful and proper trustees are L. Bennett Young and Detroit Bank and Trust Company, and that they have been so since October 16, 1979.

### CONCLUSIONS OF LAW

1. That the lawful and proper trustees of the Francis D. Shelden Revocable Inter Vivos Trust are L. Bennett Young and Detroit Bank and Trust Company as Second Successor Co-Trustees.

2. That L. Bennett Young and Detroit Bank and Trust Company, as the lawful and proper trustees, are the rightful owners of all of the outstanding shares of stock of FDS Land Company and Windigo Ranch, Inc.

3. That L. Bennett Young and Detroit Bank and Trust Company, as the lawful and proper trustees, are entitled to the funds in question on deposit with the Clerk of Court on behalf of Windigo Ranch, Inc. and FDS Land Company.

/s/ CHARLES W. JOINER
UNITED STATES DISTRICT
COURT JUDGE

KRUPANSKY, Circuit Judge, dissenting.

Because the majority and the district court have fundamentally erred in identifying the fact at issue herein, I must respectfully dissent. Contrary to the majority opinion that "the issue of fact in this interpleader action is who are the present trustees of the Shelden trust," *supra* at 433, the actual dispute in this case concerns the identity of the *corporate officers* of FDS Land Co. and Windigo Ranch Inc. who may properly withdraw the funds held in the *corporate accounts* of these organizations maintained at the National Bank of Detroit (NBD). Simply put, a determination of the individual or individuals authorized to act as the personal representative of a corporate shareholder does not resolve the issue of the identity of the duly designated corporate officer or agent authorized to control corporate assets.

Viewed properly, only the following facts are relevant. Young and Alger Shelden, Jr. were indisputably the corporate officers of FDS Land Co. and Windigo Ranch Inc. listed on the signature cards (withdrawal authorization) at NBD at the time the Trust was formed. Presumably, those corporate officers could have been removed, or additional officers with authority over corporate accounts could have been designated only by fulfilling *both* of two conditions: (a) possessing the authority to vote the corporate shares, *and* (b) actually taking formal corporate action in conformity with the laws of the incorporating state and the corporate by-laws. The Trust created by Shelden empowered the Trustee to "vote stocks held in trust." Sec. 3.2.

Accordingly, the first relevant inquiry is the validity of the Trust, which, incidentally, has not been addressed. If a valid Trust existed at the time here in issue, then any lawful Trustee would have the authority to elect corporate officers of FDS Land and Windigo Ranch, although two separate factual inquiries would *still remain*, namely (a) was the authority ever exercised, and (b) was the exercise of the authority in conformity with the law and corporate by-laws governing the operation of the two companies. If the Trust is *not* valid, perhaps because it was created for the improper purpose of underwriting a flight from prosecution, then the party in direct control of the stock was and is Shelden himself, and the secondary inquiries must resolve the presence of any evidence that he properly exercised the authority to elect the corporate officers of FDS Land or Windigo Ranch and if that exercise of authority was lawful.

The district court merely determined the identity of the proper Trustee under the Trust. Even if Shelden's *de bene esse* testimony is unassailable support for that finding, the conclusion below is simply the right answer to the wrong question. The court did not address the facts in dispute concerning the validity of the Trust so as to determine if the authority to vote the shares now inheres in *any* Trustee or remains with Shelden. Nor did the trial court find any facts establishing the manner in which the party in control of the stock may have utilized that authority to elect corporate officers authorized to withdraw corporate assets from corporate accounts.

Thus, in sum, the district court does not appear to have scrupulously hewn to the issue of determining the legitimate corporate officers or agents of either corporation. Nonetheless, the facts permit a narrowing of the possible results in this matter. First, the claimants to the money represented by TCVI argue that the Trust may be wholly invalid. If this is true, then Shelden has, as noted hereinabove, always had the exclusive authority to vote his stock to name officers of the companies. Absent any evidence (and there is none) that he voted the shares, the proper corpo-

rate officers with access to the accounts remain Young and Alger Shelden, Jr., who are named on the original NBD bank records. (The officers would not be Young and Detroit Bank & Trust as found by the district judge; this confusion is again due to mistaking the identity of the *Trustee* for the correct issue of identifying the *corporate officers* with access to the bank accounts.) If, however, the Trust is valid, then Young and Alger Shelden, Jr. *may* still be officers of FDS Land and Windigo Ranch, *or* the proper Trustees may have used their authority to name new officers, although the exercise of that authority to elect new officers, if in fact it occurred, is not apparent in the record. However, as previously noted, merely possessing the authority, through control of the corporate shares, to name new officers does not resolve the inquiry as to the identity of the corporate officers, since that authority would have to be exercised in conformity with the corporate bylaws and the law of the incorporating state.

Thus, the majority is correct that TCVI, and its elected corporate officers, can state no claim to the funds, inasmuch as a finding of Trust invalidity would leave the authority to name officers with Shelden, and a conclusion that the Trust is valid results in the clear finding, as stated by the majority, that Young and Detroit Bank & Trust are the rightful Trustees and may select corporate officers. However, as discussed, a resolution of Trust validity may still be relevant to the real issue at bar, since resolution of the proper issue of the officers' identity requires identifying the individual or individuals with the authority to name officers and then determining if that authority has ever been properly exercised. Absent an identification of the current lawful corporate officers, it is hornbook law that a release of corporate funds to one who is merely the personal representative of a stock owner, even if the identity of that representative is totally certain, would be an improper conversion of corporate assets in corporate accounts.

Because, on the present record, the identity of the lawful officers of FDS Land Co. and Windigo Ranch Inc. empowered to control the corporate assets forming the basis of the present suit remains both factually and legally unresolved, I would reverse the grant of summary judgment and remand for a hearing on the proper issue.