535 F.Supp. 667 (1982)
Francis D. SHELDEN, as Settlor of the Francis D. Shelden Revocable Inter-vivos Trust, and L. Bennet Young, Esq., as Protector of the Trust, Plaintiffs,
v.
The TRUST COMPANY OF the VIRGIN ISLANDS, LTD., and Adam Starchild, Individually and as Director and Trustee, Defendants.
Civ. No. 78-1400.
United States District Court, D. Puerto Rico.
April 6, 1982.
Francisco M. Troncoso, Fiddler, González & Rodríguez, San Juan, P. R., for plaintiffs.
Harvey B. Nachman, Santurce, P. R., for defendants.

*668 MEMORANDUM OPINION AND ORDER
CEREZO, District Judge.
On September 28, 1976 plaintiff Francis D. Shelden, as settlor, created a trust to be governed by the law of the British Virgin Islands known as the Francis D. Shelden Revocable Inter Vivos Trust. The trust deed established that all of the income from the trust would be distributed for the benefit of the settlor during his lifetime. Upon his death, the deed provided for the payment of monies and the distribution of assets of the trust to numerous beneficiaries. The property held in trust involves personal and real property of substantial value. The Trust Company of the Virgin Islands, Ltd. of Tortola, British Virgin Islands was appointed to act as trustee.[1]
Article 4.2 of the trust deed also provided that the settlor could, by written instrument delivered to the Trustee, designate a Protector of the Trust who would have the authority to perform every act and to exercise every power vested in or reserved to the Settlor in his place and stead as fully as settlor might do, including the removal of the Trustee and the designation of a successor trustee, except that he could not revoke, amend or otherwise modify the provisions of the trust.
During his lifetime, the settlor could withdraw any amount or all of the principal of the trust from time to time and he could add any property to it. The trustee and his successors were granted unrestricted power to invest and reinvest the trust property, to hold funds uninvested, to buy, sell, mortgage, lease, pledge, assign, transfer or otherwise dispose of the real property and personal property constituting the trust estates on such terms and conditions as in his discretion he may desire, to vote stocks held in trust and to carry on any business in which the settlor could be involved or have ownership interest at the time of his death. The trustee could be removed by the settlor as sole beneficiary, by the protector of the trust or by a majority of the beneficiaries with contingent interests and replaced by a successor trustee of his or their choice.
In a written instrument signed on October 9, 1976, the settlor designated co-plaintiff L. Bennett Young as protector of the trust with the right to exercise all powers vested in him by the trust deed, as stated before. Young accepted the designation in writing and the acting trustee, The Trust Company of the Virgin Islands, represented by its director Adam Starchild, recognized the authority of the protector as set forth in the Trust.[2]
Such was the state of affairs when this diversity action was filed on July 21, 1978 by Francis D. Shelden and L. Bennett Young, as settlor and protector of the trust, respectively, against The Trust Company of the Virgin Islands, Ltd. and its director Adam Starchild. Starchild was served in Puerto Rico on August 9, 1978. An amended complaint was subsequently filed. Plaintiffs seek to obtain relief for breach of trust alleging that the trustee failed to perform the trust duties. They request an accounting in accordance with the provisions of the trust deed, full disclosure of defendants' financial activities, removal of the acting trustee and a transfer of the corpus of the trust to a successor trustee so that the same can be preserved and administered within the jurisdiction and under the laws of the United States. Defendants immediately requested quashing of the summons and complaint served upon The Trust Company of the Virgin Islands, Ltd. (The Trust Company) and sought dismissal of the action against them charging failure to state a claim and forum non conveniens as to Starchild and lack of jurisdiction as to the company. Since then the case has slowly tread a tortuous path. It constitutes a lesson in frustration for the simple reason that co-plaintiff Shelden should have recognized early on that he was neither domiciled in the State of Michigan nor an indispensable party to this action and because defendants have never seriously addressed the *669 contention that the protector can continue the action despite the settlor's absence other than continuously asserting that without the settlor this case could not go on.
In summarizing its procedural development so as not to stray from the fundamental issues pending decision, suffice it to say that the suit was initially dismissed by Chief Judge Toledo on the grounds that the Court had no jurisdiction over the trust company since it transacted no business in Puerto Rico, that Starchild's liability would be predicated on his actions as director of the Trust Company and that the balance of conveniences pointed towards Tortola as the proper forum. On reconsideration, the Court examined multiple documents submitted by plaintiffs and vacated its prior judgment of dismissal, expressly finding that the evidence submitted by plaintiffs established, among other things, that Starchild was one of the two directors of the Trust Company and one of the two stockholders, that he made representations to Shelden on the administration and day-to-day operations of the Trust Company, that all of Shelden's contacts with the Trust Company had been through Starchild, that Starchild wrote Shelden twenty-six letters and aerograms from San Juan and was sent twenty-seven letters by Shelden to his San Juan address and that he sent Shelden cables from San Juan and phoned him several times from here. The Court found that the cause of action did not arise from contacts with Puerto Rico of the Trust Company via Starchild but from the relationship between the company and Starchild with plaintiffs, that during the years 1977-78 Starchild may have conducted the bulk of the Trust Company's affairs from Puerto Rico and, as its agent, availed himself of the privilege of conducting business within the forum state. Upon reconsidering its prior ruling, it discarded as inexact its initial determination that the Trust Company appeared to have operated only in Tortola and found instead that it operated wherever Starchild happened to be, which between September 1977 and July 1978 frequently happened to be Puerto Rico. The motion to dismiss for lack of jurisdiction was renewed by defendants on May 2, 1979. Opposition was filed yet the matter was still pending when various other motions were fileda Motion to Dismiss under Rule 37, a Motion to Add and Drop Parties filed by plaintiffs on November 15, 1979 and supplemented on December 12, 1979 and the latest motion of defendants of January 29, 1981 entitled Motion to Dismiss the Complaint and All Motions Except for the Motion for Attorneys' Fees for Obstinacy. After examining the various matters discussed by way of motions, in oral argument and during the evidentiary hearing, we are convinced that Shelden's claim must be dismissed not only for his refusal to be deposed[3] but because he is not domiciled in the State of Michigan, as he alleged in the complaint. However, defendant's main thrust for dismissal has been Mr. Shelden's newly-discovered status as an alien. They have stated in their January 29, 1981 Motion to Dismiss the Complaint and All Other Motions except that for Attorneys' Fees that co-plaintiff Shelden is an alien since on March 1979, prior to the filing of the complaint, he became a citizen of the Republic of France and that, consequently, there is no jurisdiction for this is a case where a noncitizen plaintiff sues a noncitizen defendant (The Trust Company). They contend that the Court's jurisdiction cannot be cured by adding and dropping parties since it did not have jurisdiction over the complaint as originally filed and that "the addition of another party plaintiff whose interests are secondary and derivative of the French citizen's adds no weight and does not change the critical relationships."[4] They do not identify this party plaintiff *670 but, by referring to "the addition of another plaintiff," we assume the reference is to the successor trustees since the protector has been a litigant since the beginning. In a supplemental memorandum filed on March 18, 1981 in support of that motion, defendants urge that Shelden's declaration of naturalization as a Frenchman was a voluntary act of expatriation from the United States, that the renunciation of his U.S. citizenship can be determined from the facts and that the facts lead inescapably to such an intention. On January 30, 1981 the matter of Shelden's acquiring a new nationality and renouncing his American citizenship came up for hearing at which time his counsel argued that although he had acquired French nationality before filing the complaint he has never renounced his American citizenship. Memoranda of law in support of their respective positions were filed discussing the issues of dual nationality and expatriation.
On June 12, 1981, the Court, understanding that the sensitive issue of expatriation and renunciation of Mr. Shelden's American citizenship could and should be avoided, entered an order directed primarily to the question of his domicile. We then expressed that an American citizen who is not also a citizen of one of the United States cannot sue or be sued in federal court, that plaintiff resided in Holland at the time of filing the complaint although he then alleged he was a citizen of Michigan and that certain facts had been brought to the attention of the Court which seriously caused it to entertain doubts as to his true domicile. Outstanding among these was the fact that he acquired French nationality on March 9, 1978, prior to the filing of the complaint and prior to that date had married a French citizen, and that he had continuously refused to be deposed in territory of the United States. We pointed out that these facts tended to indicate that although Shelden may have a "floating intention" of returning to Michigan he may, nevertheless, have acquired a new domicile in Holland as it was his intention to remain there for an indefinite period of time.
"For purposes of diversity jurisdiction under 28 U.S.C. Sec. 1332(a)(1), state citizenship is the equivalent of domicile." Hawes v. Club Ecuestre El Comandante, 598 F.2d 698, 701 (1st Cir. 1979). Domicile has been defined as "`the technically pre-eminent headquarters that every person is compelled to have in order that certain rights and duties that have been attached to it by law may be determined.'" Williamson v. Osenton, 232 U.S. 619, 625, 34 S.Ct. 442, 443, 58 L.Ed. 758 (1914). A person may change his or her domicile, but he or she may have only one domicile at a time. Hawes v. Club Ecuestre El Comandante; Morris v. Gilmer, 129 U.S. 315, 328, 9 S.Ct. 289, 293, 32 L.Ed. 690 (1889). In order to acquire a new domicile two things are necessary: 1) residence in the new domicile and 2) the intention to remain there. Hawes v. Club Ecuestre El Comandante, at 701 (quoting from Sun Printing & Publishing Association v. Edwards, 194 U.S. 377, 383, 24 S.Ct. 696, 698, 48 L.Ed. 1027 (1904)). "[I]t is not required that the intention be to stay there permanently. A "floating intention" to return to a former domicile does not prevent the acquisition of a new domicile." Id.; see Gilbert v. David, 235 U.S. 561, 569, 35 S.Ct. 164, 166, 59 L.Ed. 360 (1915).
Aware that the burden was on plaintiff Shelden to show that jurisdiction exists, an evidentiary hearing was scheduled at which he was required to prove to the satisfaction of the Court that his domicile at the time of filing the complaint was Michigan. Plaintiff did not attend this hearing held on August 19, 1981 and sent instead an affidavit attempting to negate a change of domicile. The only witness presented was Mr. L. Bennett Young, the protector of the trust. His testimony reveals scarce knowledge concerning the factors which would, in effect, establish Mr. Shelden's domicile in Michigan. Although he testified that to his knowledge Shelden was registered to vote at the relevant time in the State of Michigan, he later clarified that he said that because he believed it to be so but that he had not checked the voting registration. He also stated that corporations in which Shelden was the sole stockholder own real *671 estate in Michigan and on cross-examination acknowledged that the trustee, not Shelden, held title to those properties prior to the filing of the complaint. The office that he stated Mr. Shelden allegedly keeps in Michigan was described by him as a family office through which the senior Shelden runs personal affairs and investments. The last time that the witness saw Shelden was in Holland in the spring of 1979. The evidence reveals that Shelden has not lived in Michigan since at least 1976, that throughout these years he has lived in Holland or France, that he has openly stated that he will not appear in this jurisdiction or within the geographical demarcation of the United States, that he is under indictment in the State of Michigan and a warrant for his arrest has been issued since he fled the jurisdiction to avoid prosecution in that State, and that he took French nationality in March 1978 prior to filing the complaint and married a French citizen before the suit. All of these circumstances point to the conclusion that plaintiff Shelden has the intention of remaining at his new residence indefinitely and that he has constantly expressed his intention of not returning to the United States where he will be subjected to criminal prosecution.
However, the problem does not end there. Plaintiffs have contended throughout these proceedings that if the action were dismissed as to Shelden it should be allowed to continue being prosecuted by L. Bennett Young as protector of the trust. Additionally, they have filed a Motion to Add and Drop Parties requesting that Shelden's claim be dropped and that L. Bennett Young and The Detroit Bank and Trust Company of Detroit, Michigan, be added as plaintiffs in their capacity as successors trustees of the Francis D. Shelden Revocable Inter Vivos Trust. Although they have not discussed this matter in any depth, defendants' sole opposition against prosecution of the case by Young, as protector and for that matter as successor trustee, has been that since Shelden is the settlor and the sole beneficiary of the trust the action cannot continue in his absence. They relegate Young to the status of a secondary figure although they have never asserted that his presence is a sham or fraud. We must, therefore, examine the figure of the protector and his relationship to the trust to determine this matter. We must also determine if Shelden, as settlor-sole beneficiary of the trust, is an indispensable party to the action since, if he is, jurisdictional defects cannot be cured by adding other parties and dropping him as plaintiff. However, if he is found not to be an indispensable party, his citizenship is irrelevant in measuring jurisdiction and by dropping him as plaintiff the defect in jurisdiction would be cured and would relate back to the original filing of the complaint. Vieser v. Harvey Estes Construction Co., 69 F.R.D. 370, 376-377 (D.C.Okl.1975).
When the trust was created, Shelden vested Young with all powers belonging to him, including the power of removal of the trustee and designation of successor trustees, prohibiting him only from revoking or modifying the trust. The Trust Company, acting trustee, acknowledged in writing both receipt of his appointment and of his authority as set forth in the trust and in the appointment of protector. According to the powers and the functions assigned to the protector in the trust instrument, it can reasonably be said that he acts as a representative of the settlor-sole beneficiary and as guardian of his interests in the trust. He acts in a fiduciary capacity for the settlor as sole beneficiary of the trust. The protector is not a party who has been brought to this litigation in a collusive manner to create diversity jurisdiction which otherwise would not exist. His existence and authority was acknowledged by defendants since 1976. He is a person with strong ties to the trust since its creation who was assigned powers and functions and who accepted the duties imposed upon him. His authority emanates from the trust instrument itself. Having acknowledged his authority to act as protector of the trust, defendants cannot now complain when he discharges the duties delegated to him as such. He is a party with real interest in the trust and in the accounting sought. This *672 being his status, one can hardly say, as defendants urge, that it is a mystery for the protector to act on behalf of the interests of the settlor-beneficiary when he seeks an accounting from a trustee alleging breach of trust and wrongdoing in the administration and management of the trust affairs.
Furthermore, and perhaps more important, is the fact that the trust instrument gave Shelden, as sole beneficiary, and Young, as protector, the right to remove the trustee and to designate his successor. There was no provision requiring them to seek approval of the court in the event of removal of the trustee. In the exercise of the powers vested in them by the trust itself, the acting trustee was removed and a successor trustee designated. Subsequently, and again in the exercise of their powers, that successor trustee was removed and other successor trustees appointed, namely, L. Bennett Young who originally filed suit as co-plaintiff of protector and The Detroit Bank and Trust Company. Defendants have not shown any legal impediment to the exercise of that power by the settlor-beneficiary and/or the protector. There is no reason to believe that the removal of the defendant trustee and the subsequent designation of the successor trustees is not a legitimate exercise of those powers. This action is essentially a proceeding seeking an accounting of the defendant trustee and successor trustees can bring accounting proceedings against the original trustee who has allegedly committed wrongdoing in the administration of the trust.
Successor trustees having been designated and having requested the Court to allow them to appear as plaintiffs, we must now determine if the action can be prosecuted by them in the absence of Mr. Shelden who has been found to be a party not domiciled in the State of Michigan but in Europe and whose presence destroys diversity jurisdiction. Since the trust deed invests the protector with full authority to exercise the rights reserved to the settlor-beneficiary since its creation and since the successor trustees have been designated in accordance with the provisions of the trust instrument, they are empowered as such successor trustees to continue this action. Shelden's presence in the litigation is neither necessary nor indispensable for the trustees can demand an accounting from the original trustee and can sue to protect and preserve the trust capital. Neither Young, as protector, nor the successor trustees are straw parties to this action. Both the protector and the successor trustees are available to testify and to be deposed and there is complete diversity between them and defendants. Were we to conclude that the successor trustees and/or the protector cannot initiate this action despite their capacity to do so and their interest in the trust, we would in effect be holding that because the settlor of a trust is a fugitive the successor trustees cannot have access to the courts to hold liable the wrongdoing trustee. Even if the settlor were convicted, the successor trustees could institute accounting proceedings against the original trustee. Although Shelden's fleeing the jurisdiction to avoid prosecution is an illegal and an offensive action, the Court having previously exercised in personam and subject matter jurisdiction, cannot now close the door to the protector or to the successor trustees of the trust to seek an accounting for alleged acts of mismanagement and breach of trust by the predecessor trustee.
Having concluded that Shelden is not an indispensable party and that the successor trustees have a legitimate and real interest in the trust, the Court cannot dismiss this action, Navarro Savings Association v. Lee, 446 U.S. 458, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980). However, had it not been for settlor's temerity throughout these proceedings, the resultant delay and expense having to adjudicate the matter concerning his presence in the litigation could have been spared. The Motion to Add and Drop filed by plaintiffs is a recognition that Shelden's presence was never necessary nor indispensable.
Thus, L. Bennett Young and The Detroit Bank and Trust Company of Detroit, are admitted as plaintiffs in their role of successor trustees but are, nevertheless, ORDERED to satisfy defendants the sum of *673 SEVEN THOUSAND DOLLARS ($7,000.00) in attorneys' fees within the term of ten days after notice of this Order. Failure to do so shall result in dismissal of the entire action without further delay or excuse.
SO ORDERED.
NOTES
[1] Article 4.1 of the trust deed.
[2] Plaintiffs' Exhibit 3 admitted at the August 9, 1981 evidentiary hearing.
[3] Shelden is not entitled to the protective order he has sought in this action alleging hardship if he were ordered to appear for his deposition in United States territory. This plaintiff chose this jurisdiction and cannot evade it and at the same time seek its protection. Novel v. Garrison, 42 F.R.D. 234 (D.C.La.1967).
[4] Page 7 of defendants' Memorandum in Support of the Motion to Dismiss filed on January 29, 1981.