L. Bennett YOUNG and Comerica Bank-Detroit, as Successor Trustees of the Francis D. Shelden Revocable Intervivos, Plaintiffs,

v.

PANNELL FITZPATRICK & COMPANY, Defendant.

Civ. No. 85–2075 (RLA).

United States District Court, D. Puerto Rico.

Aug. 8, 1986.

Francisco M. Troncoso, San Juan, P.R., for plaintiffs.

Francisco Fernández Carbia, Hato Rey, P.R., for defendant.

## OPINION AND ORDER

ACOSTA, District Judge.

Present before the Court for disposition is defendant's motion to quash summons and for dismissal of this action for lack of *in personam* jurisdiction filed on February 7, 1986 (Docket No. 9). Plaintiffs filed an opposition thereto on March 31, 1986 (Docket No. 15).

An amended complaint was filed on April 24, 1986 (Docket No. 19)[1] based on diversity of citizenship between the parties, 28 U.S.C. sec. 1332. Plaintiffs, L. Bennett Young (Young) and Comerica Bank-Detroit (Comerica) are citizens of Michigan and defendant, Pannell Fitzpatrick & Company (PF & C) is a professional partnership whose partners and office are located in Roadtown, Tortola, British Virgin Islands.

Service of process was made through publication of edicts pursuant to the provisions of Puerto Rico's long-arm statute, 32 L.P.R.A. App. III, R. 4.5 (1983).[2]

In the complaint, plaintiffs seek redress for damages caused by defendant's alleged fraud, negligence, conspiracy and breach of fiduciary duty in the handling of the Francis D. Shelden Revocable Intervivos Trust (Shelden Trust). We do not need to reach the merits of the controversy at this time. We shall merely determine whether defendant is amenable to suit in this jurisdiction, following the established doctrines which govern the reach of Puerto Rico's long-arm statute.

## PROCEDURAL BACKGROUND

The controversy before us is another chapter in the litigation revolving around the Shelden Trust.[3] At this point, we take notice of pertinent facts established by previous cases regarding the Shelden Trust in the United States District Court for the District of Puerto Rico, particularly Civil No. 78–1400(HL).[4]

The Shelden Trust was entered into on September 28, 1976 between Francis D. Shelden (Shelden), the settlor of the trust, and Adam A. Starchild (Starchild), on behalf of Trust Company of the Virgin Islands Ltd. (TCVI). TCVI was a company formed under the laws of the British Virgin Islands by Starchild in September of 1976 for the sole purpose of acting as trustee for the Shelden Trust. TCVI was also purportedly managing the Shelden Trust's assets. As of 1982, the only shareholders and directors of TCVI were Starchild and one Frank James Holahan (Holahan).

Under the terms of the Shelden Trust, Shelden is the sole beneficiary during his

---

1. Plaintiffs originally sued Pannell Fitzpatrick & Company and Pannell Kerr Forster & Company. However, on April 18, 1986, this Court granted plaintiffs' motion for voluntary dismissal of the claim against codefendant Pannell Kerr Forster & Company (Docket No. 17) and the complaint was amended accordingly.

2. Rule 4.5 of the Puerto Rico Rules of Civil Procedure provides, in pertinent part, that the Court can order service by publication "when process is to be served on a foreign corporation with no resident agent."

3. In the United States District Court of Puerto Rico, the Shelden Trust has been litigated in Civil No. 78–1400 before three different judges. *Shelden v. Trust Co. of the Virgin Islands,* No. 78–1400(JT) (D.P.R. Jan 10, 1979) (opinion and order by Chief Judge Toledo asserting personal jurisdiction over defendants, vacating opinion

and order of October 10, 1978, which was dismissed for lack of personal jurisdiction); *Shelden v. Trust Co. of Virgin Islands Ltd.,* 535 F.Supp. 667 (D.P.R.1982) (memorandum opinion and order by Judge Cerezo dismissing Shelden's claim and adding L. Bennett Young and The Detroit Bank and Trust Company of Detroit, Michigan, as plaintiffs in their capacity as successor trustees of the Shelden Trust); *Detroit Bank and Trust Co. v. Trust Co. of the Virgin Islands Ltd.,* 644 F.Supp. 444 (D.P.R. 1985) (opinion and order by Judge Laffitte finding Starchild personally liable for breach of fiduciary duty and actual fraud in his management and wrongful removal of assets from the Shelden Trust).

4. A district court may take judicial notice of records in related proceedings before that court. *State of Fla. Bd. of Trustees v. Charley Toppino & Sons, Inc.,* 514 F.2d 700, 704 (5th Cir.1975).

lifetime. The Shelden Trust assets consist largely of shares of common stock listed on the New York Stock Exchange. Due to the manner in which Starchild and TCVI conducted the management of the trust, a lawsuit was filed by Shelden and Young against Starchild and TCVI. Starchild and TCVI were found liable for fraudulent dealings with the trust assets and for breach of fiduciary duty to the trust.[5]

PF & C was hired by Starchild, on or about October 1976, to render professional accountancy services for TCVI. This professional relationship existed during 1977 and 1978 when Starchild was frequently within Puerto Rico.

## ARGUMENTS

Plaintiffs' allegations regarding defendant's contacts with Puerto Rico are all based on the contacts that Starchild individually established in the forum. Starchild apparently maintained an apartment, listed telephone number and bank account under the name of Crosswinds Realty in Puerto Rico.[6]

According to the affidavits of Young dated December 12, 1978[7] and March 26, 1986,[8] PF & C conferred by telephone with Starchild about twice a week and mailed him copies of statements regarding activities of the Shelden Trust.

According to the April 3, 1979 affidavit of Robin Gaul (Gaul) (formerly of PF & C),[9] Starchild would, by letter or telephone, advise PF & C of their (TCVI directors) basic decisions regarding TCVI business.

However, in his affidavit of January 30, 1986,[10] Gaul specifically denies that any person from PF & C ever communicated with any officer of TCVI anywhere in Puerto Rico.

Plaintiffs also allege that PF & C, during the performance of routine banking services for TCVI and the Shelden Trust, must have opened and undertaken transactions with Starchild Crosswinds Realty's bank account in Puerto Rico. However, plaintiffs do not offer conclusive evidence to support this allegation.[11]

Plaintiffs ask the Court to submit PF & C to Puerto Rico's jurisdiction because jurisdiction was already exercised over Starchild in this forum. Plaintiffs' basis for this argument is couched in allegations of a conspiracy between PF & C and TCVI, as agents, against the Shelden Trust.

Plaintiffs cite no authority to support their novel theory that this Court should exert *in personam* jurisdiction over a non-resident party based solely on the contacts within the forum of another nonresident party, nor have we found any.

Defendant contends that it is not a foreign corporation but "an unincorporated firm of chartered accountants", with offices established prior to April 1983 in Roadtown, Tortola, British Virgin Islands, not doing business nor licensed to do business in Puerto Rico and, therefore, not amenable to service of process pursuant to the United States and Puerto Rico Constitutions and Rule 4.5 of the Puerto Rico Rule of Civil Procedure.[12]

---

5. *Detroit Bank and Trust Co. v. Trust Co. of the Virgin Islands, Ltd.,* 644 F.Supp. 444 (D.P.R. 1985). Prior to that decision, Chief Judge Toledo found personal jurisdiction over Starchild in Puerto Rico because from September 1977 to July 1978 the bulk of TCVI's affairs may have been conducted from Puerto Rico by Starchild as its agent. *Shelden v. Trust Co. of the Virgin Islands,* No. 78–1400(JT), opinion at 7 (D.P.R. Jan. 7, 1979).

6. Plaintiff's opposition to motion to dismiss, Exhibit B (Docket No. 15);

7. *Id.,* Exhibit H.

8. *Id.,* Exhibit G.

9. *Id.,* Exhibit M.

10. Defendant's motion to dismiss (Docket No. 9).

11. There is no specific evidence indicating PF & C opened the Crosswinds Realty account or that PF & C signed checks on or made deposits to that particular account.

12. Defendant's motion to dismiss, para. 4 (Docket No. 9).

## IN PERSONAM JURISDICTION

■ This being a diversity case, the Court's jurisdiction over the person of the non-resident defendant is governed by the forum's long-arm statute. *See, Mangual v. General Battery Corp.*, 710 F.2d 15, 18 (1st Cir.1983); 7 Wright & Miller, *Federal Practice and Procedure: Civil* sec. 1075 (1969). Under Puerto Rico's long-arm statute, this Court would have jurisdiction over PF & C if the action or claim arose as a result of the following: (1) such person or his agent carries out business transactions within Puerto Rico, or (2) executes by himself or his agents tortious acts within Puerto Rico. 32 L.P.R.A. App. III, R. 4.7 (1983).

■ Both sections (1) and (2) of Puerto Rico's rule have at their core an inquiry of whether the nonresident contacts with the forum are sufficient to justify subjecting him to its court's jurisdiction. *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F.2d 902 (1st Cir.1980). In that case, the Court summarized a three-pronged test adopted by the Supreme Court of Puerto Rico for the purpose of *in personam* jurisdiction in the case of *A.H. Thomas Co. v. Superior Court*, 98 P.R.R. 864 (1970). First, there must be an act done or consummated in the forum by the nonresident defendant. "Physical presence is not necessary; the act or transaction may be by mail." *Id.* at 870. Second, the cause of action must arise out of defendant's action within the forum state. Finally, the particular activity linking the forum, the defendant, and the cause of action must be substantial enough to meet the due process requirements of fair-play and substantial justice. *Id.* at 870; *Escude Cruz, supra,* 619 F.2d at 904–05. Puerto Rico's long-arm statute permits the exercise of personal jurisdiction to the full extent of constitutional authority. *Vencedor Mfg. Co. v. Gougler Industries, Inc.*, 557 F.2d 886, 889 (1st Cir.1977). We are, therefore, also guided by decisions of the United States Supreme Court.

■ Considerations of "fair play and substantial justice" require in each case careful scrutiny of defendant's activities. *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); *Escude Cruz, supra,* 619 F.2d at 904. All the facts must be evaluated to determine whether the defendant purposefully established minimum contacts within the forum. *See, Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 2185–86, 85 L.Ed.2d 528 (1985).

■ The contact within the forum must be the result of a purposeful act on the part of the defendant. "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of a contact with the forum State ... it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus involving the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). The "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random", "fortuitous", or "attenuated" contacts. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 772, 104 S.Ct. 1473, 1477, 79 L.Ed.2d 790 (1984); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 299, 100 S.Ct. 559, 568, 62 L.Ed.2d 490 (1980); or of the "unilateral activity of another party or a third person," *Helicópteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 1873, 80 L.Ed.2d 404 (1984).

Whether defendant's contact with the forum is described as an "affirmative act" or "purposeful availment", the inherent foreseeability of consequences is one of the keystones of personal jurisdiction. *Escude Cruz, supra,* 619 F.2d at 905, *citing Vencedor Mfg. Co., supra,* 557 F.2d at 891–92.

### Act Done or Consummated in Forum

■ The uncontested evidence before us reveals that PF & C is basically an accounting firm operating out of Tortola, British Virgin Islands, with no offices, no real or movable property, nor any place of busi-

ness within Puerto Rico. There is no evidence indicating that it has advertised or otherwise solicited business in this forum. It has not filed any government report nor any return in Puerto Rico, and has not paid income tax for any professional services rendered in this forum.[13]

The services performed by PF & C for TCVI included the normal accounting functions of bookkeeping, reconciliation of bank accounts, and filing of financial reports and tax returns as required by the laws of the British Virgin Islands.[14] The books and records for the trust were kept at PF & C's British Virgin Islands' Office. The daily operations and administration of the trust were carried out from that office according to the laws of the British Virgin Islands.

### Arising From

The second part of the personal jurisdiction test requires that the cause of action arise from defendant's activities within Puerto Rico. In this case, PF & C is being sued for activities carried out from its office in the British Virgin Islands. This is not a situation where a resident of a forum sues a nonresident for activities performed or conduct intended to take effect within that forum. Instead, the activities of PF & C allegedly affected a trust outside of Puerto Rico and the plaintiffs, who are nonresidents of Puerto Rico. Therefore, it appears that the cause of action has only an attenuated relationship, through Starchild, with Puerto Rico.

### Nexus

The third prong of the *A.H. Thomas* test requires that the relationship between the forum, defendant, and the cause of action be substantial enough to satisfy due process. We find no such substantial relationship on the fact before us. As we stated

before, due process requires that fair play and substantial justice be served when haling a nonresident into the forum's jurisdiction. *See, Keeton, supra,* 465 U.S. at 772, 104 S.Ct. at 1477; *International Shoe, supra,* 326 U.S. at 316, 66 S.Ct. at 158. Foreseeability of consequences is also a pertinent inquiry. *Escude Cruz, supra,* 619 F.2d at 905.

■ We believe fair play and substantial justice would not be served by holding a professional servicing company, such as defendant, amenable to suit in whichever forum its clients decide to temporarily conduct business. Had Starchild decided to move to another jurisdiction to conduct his schemes, PF & C would have had to communicate with him in that forum as well.

The due process clause gives a degree of predictability to the legal system, allowing potential defendants to structure their conduct with "some minimum assurance as to where that conduct will and will not render them liable to suit," *World-Wide Volkswagen Corp., supra,* 444 U.S. at 297, 100 S.Ct. at 567. We do not think plaintiffs have shown us that defendant herein should or could have anticipated defending itself in this forum, as distinguished from the other jurisdictions touched by the trail of Starchild's use of assets from the Shelden Trust.

We cannot agree with plaintiffs' argument that PF & C was doing business in Puerto Rico by merely carrying out Starchild's directives and handling the administration of the Shelden Trust while Starchild was in Puerto Rico. Without more actual proof of contacts with Puerto Rico by PF & C of their own accord, we cannot make a finding of *in personam* jurisdiction on the sort of "bootstrap" theory advanced by plaintiffs.

---

13. Affidavit of Gaul dated January 30, 1986, defendant's motion to dismiss (Docket No. 9).

14. Affidavit of Gaul dated April 3, 1979, plaintiffs' Exhibit M, pp. 1–2:

In short, our services which are collectively classified as accounting services are so all-inclusive as to make unnecessary the hiring of officers by our clientele to perform these standard functions. The companies, naturally, have directors who establish company policy but even though these directors make the basic decisions and set forth the overall guidelines for their company's activities, we take care of such day-to-day operations as may exist.

Even assuming, arguendo, that PF & C communicated with Starchild in this forum, the fact remains that it was Starchild who chose to do business from within Puerto Rico, not PF & C.

We believe that the action at bar represents a situation of unilateral activities of another party or a third person, i.e., Starchild, that does not satisfy the "purposeful availment" by PF & C as required by *Hanson, supra,* 357 U.S. at 253, 78 S.Ct. at 1239 and *Helicópteros, supra,* 466 U.S. at 416, 104 S.Ct. at 1873.[15]

### VENUE/FORUM NON CONVENIENS

 For substantially the same reasons that we do not agree with plaintiffs' arguments for finding there is personal jurisdiction, we do not believe venue is properly placed in Puerto Rico. Plaintiffs argue that venue is proper in this forum because, according to statements by Starchild to Holahan, he (Starchild) could get everything "screwed up" in the courts in the British Virgin Islands and "it would be years before anything could happen one way or another".[16] Starchild was apparently aware of how the English courts worked from his experience while in prison in England.[17] We do not believe this argument persuasive for finding venue in Puerto Rico. To the contrary, our concern is primarily the burden imposed on a defendant who does not have the luxury of deciding, as plaintiffs do, where to sue. *World-Wide Volkswagen, supra,* 444 U.S. at 292, 100 S.Ct. at 564; *Insurance Co. of North America v. Marina Salina Cruz,* 649 F.2d 1266, 1272 (9th Cir.1981).

A court does not acquire jurisdiction over a defendant merely because adjudication is needed by plaintiffs and the Court is the most convenient location. *Conwed Corp.*

*v. Nortene, S.A.,* 404 F.Supp. 497, 507 (D.Minn.1975). *See also, Hanson, supra,* 357 U.S. at 254, 78 S.Ct. at 1240. In addition, we do not see Puerto Rico as the most convenient forum since few, if any, of the records of the Shelden Trust and TCVI and witnesses that may be needed to solve the present controversy are within this jurisdiction.

 Separate from the issue of venue is the doctrine of forum *non conveniens.* Forum *non conveniens* comes into play when a more convenient forum is in a foreign country. However, we will not entertain a discussion of the forum *non conveniens* argument since to do so the Court must have subject matter and personal jurisdiction and be a proper venue. 15 Wright, Miller & Cooper, *Federal Practice and Procedure:* Civil sec. 3828 (1986).

We, therefore, hold that venue does not properly lie within this forum.

### CONCLUSION

In view of all the above, PF & C's motion to dismiss for lack of *in personam* jurisdiction filed on February 7, 1986 (Docket No. 9) is hereby granted and the amended complaint filed on April 24, 1986 (Docket No. 19) is hereby dismissed. Judgment shall be entered accordingly.

IT IS SO ORDERED.

---

**15.** Using the "purposeful availment" principle, the Court has declined to find personal jurisdiction over a trustee whose only affiliation with the forum resulted from the settlor's decision to exercise her power of appointment in that forum, *Hanson, supra,* 357 U.S. at 253, 78 S.Ct. at 1239. "In such instances, the defendant has had no 'clear notice that it is subject to suit' in the forum and thus no opportunity to 'alleviate the

risk of burdensome litigation' there." *Burger King Corp., supra* 105 S.Ct. at 2183–84, n. 17, *citing World-Wide Volkswagen, supra,* 444 U.S. at 297, 100 S.Ct. at 567.

**16.** Affidavit of Holahan dated April 11, 1980, plaintiffs' Exhibit D, para. 14, p. 4.

**17.** *Id.*