**UNITED STATES, Plaintiff,**

v.

**Phillip Daniel BROOKS, Defendant.**

**Civ. No. 85–CV–74433–DT.**

United States District Court,
E.D. Michigan, S.D.

Aug. 8, 1986.

Karl Overman, Asst. U.S. Atty., Detroit, Mich., for plaintiff.

Homer McClarty, Southfield, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

COHN, District Judge.

This is a breach of contract case. Defendant Phillip Daniel Brooks (Brooks) incurred a two year service obligation in exchange for National Health Service Corps (NHSC) scholarship funds* to support his medical education. After breaching the terms of his scholarship and going into default on the resulting financial obligations, Brooks entered into a Forebearance Agreement (the Agreement) wherein he agreed to begin his service obligation within six months in an area to be determined by the NHSC. Brooks was assigned to the Indian Health Service (IHS) and referred to two potential locations where he could fulfill his obligation. Brooks did not report to either facility by the required time.

Brooks's main claim is that he never actually received an assignment from NHSC; thus, he cannot be held liable for breaching the terms of the Agreement.

* These are appropriated funds; there is no dispute over the status of the United States of America as plaintiff.

Before me is plaintiff's motion for summary judgment on the grounds that there is no genuine issue as to the facts that NHSC assigned Brooks to IHS, that Brooks did not begin his service at either location or respond to IHS in any way, and that therefore Brooks breached the Agreement and is liable for his previously defaulted financial obligations.

## I.

The essential facts follow. They will be discussed in more detail in Part III below.

(1) From August 1, 1977 to June 30, 1979, while a student at the Meharry Medical College School of Medicine, Nashville, Tennessee, Brooks was a recipient of scholarship funds under the NHSC Scholarship Program, 42 U.S.C. § 2541. By accepting these funds, Brooks incurred a two year service obligation. On November 13, 1979, Brooks received a three year deferment for an internal medicine residency conditional upon giving NHSC thirty days written notice of any intent not to complete the program as approved.

(2) On November 20, 1980, Brooks breached the terms of his deferment, and thus his award, by changing to a four year radiology residency without obtaining permission of NHSC. Brooks then defaulted on the resulting financial obligations.

(3) On October 5, 1984, the Agreement was accepted by both NHSC and Brooks. Under the terms of the Agreement, Brooks could fulfill his scholarship service obligation as a radiologist at a location to be determined by NHSC; his service had to begin within six months of acceptance of the Agreement. Upon the completion of his service obligation NHSC would discharge Brooks's scholarship debt.

(4) Brooks was notified of two IHS radiology vacancies (one in Anchorage, Alaska and the other in Gallup, New Mexico), by a letter dated January 7, 1985. The letter placed on Brooks an affirmative duty to contact the locations and to notify IHS by February 28, 1985 whether he would be accepting either position.

(5) Due to Brooks's lack of acceptance of either location and complete lack of communication with IHS, NHSC notified Brooks by a letter dated June 17, 1985 that he had breached the terms of the Agreement and that his financial obligations were immediately due and owing.

## II.

Summary judgment may be granted where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The evidence, together with all inferences to be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir.1979). The movant's papers are to be closely scrutinized, while those of the opponent are to be viewed indulgently. *Watkins v. Northwestern Ohio Tractor Pullers Association*, 630 F.2d 1155, 1158 (6th Cir.1980). All that is required of the nonmovant is that he show sufficient evidence supporting the claimed factual dispute to require a judge or jury to resolve the parties' differing versions of the truth at trial. *National Bank of Detroit v. Shelden*, 730 F.2d 421, 435 (6th Cir.1984). Where the purported issues of fact asserted by the nonmovant are not material to the disposition of the ultimate issue, the case should be decided as a matter of law.

## III.

### A.

Under the Agreement the United States agreed to forebear from collection activity against Brooks for as long as he complied with its terms. The key condition was that Brooks would begin service within six months "in a high priority health manpower shortage area to be determined by the NHSC...." Brooks contends that summary judgment is inappropriate because he never received an offer of employment from an NHSC associated medical center, that NHSC never notified him that the one notice of vacancy he received would

be his only alternative, and that NHSC failed to notify him of other open positions. Any dispute over these facts, however, is not material to a resolution of the case.

The key issue is whether NHSC met its obligation to assign Brooks to a service area, and if so, if Brooks refused to act on the assignment, thereby failing to comply with the terms of the Agreement. The letter of January 7, 1985 notified Brooks that he had been assigned to IHS to fulfill his NHSC service obligation, and that there were two IHS radiology vacancies, one in Anchorage, Alaska and the other in Gallup, New Mexico. The letter made clear that it was Brooks's obligation to contact the facilities and attempt to finalize a match, and that IHS needed to be notified whether he would be accepting either position by February 28, 1985.

The assignment and notice of available positions was all the NHSC was required to do under the terms of the Agreement. On his own initiative, however, Dr. Carl Heitz, Chief of Radiology Services at the Anchorage facility, telephoned Brooks to discuss the vacant position. During that conversation, Dr. Heitz informed Brooks that if he was interested in the vacancy, he should send his resume and references as soon as possible. According to Dr. Heitz, Brooks orally indicated he was not interested in serving in so remote a location as Anchorage and did not send his credentials or his resume. Brooks does not dispute Dr. Heitz.

On May 22, 1985, IHS notified NHSC that Brooks had not pursued the Anchorage vacancy, that this was the only opening in the IHS for a radiologist, and that he should therefore be placed back in default of his scholarship commitment since the time allowed by the Agreement had expired. Brooks's claim that there was no "meeting of the minds" as to whether an offer was in fact made is of no moment. If Dr. Heitz did not discuss salary, benefits, and other technical details of a job offer, as Brooks states, it was due to Brooks's own expressed lack of interest, confirmed by the lack of follow-up efforts on his part in not sending his credentials.

## B.

Even assuming, as Brooks states, that his lack of interest was motivated by the difficulty of moving with a wife in a pregnant condition, and that he believed another position might yet open in the other designated assignment area, summary judgment is still warranted since these facts do not affect the resolution of the case. When the expiration of the six-month period allotted by the Agreement was imminent, it was incumbent upon Brooks to realize that no position in the other designated assignment area had opened and that, to comply with the Agreement, he had to redirect his attention to the only vacancy of which he was aware, that in Anchorage. At the very least, Brooks should have communicated with IHS to acquire more information concerning the Anchorage position and/or to explain the delay and try to establish his future course of action. Brooks has submitted no evidence of any attempt to contact IHS, either by the initial deadline of February 28, 1985 or at any time after that, for the entire duration of the six-month period. The first time Brooks wrote to IHS was more than two months after the six-month period had expired, and this was to protest NHSC's placing him back in default on his financial obligations.

■ The further discovery requested by Brooks to prove that he was seeking other assignments is unnecessary, since seeking other assignments was not Brooks's duty or right under the Agreement. Similarly, his claim that a location in Phoenix was never offered to him is immaterial. Under the Agreement, Brooks bound himself to fulfill his service obligation in an area determined by the NHSC. It was solely within the NHSC's discretion where to assign him. The fact that another facility may have been available before Anchorage does not matter. What does matter is that Brooks did know that he had been assigned to Anchorage and made no effort to apply

for the position or communicate with IHS, as was required of him, to clarify the course of his actions.

### IV.

■ Brooks also relies on certain defenses described in his answer; they are no more compelling than his defense described above. He offers no explanation why he characterizes the selection at the Phoenix facility as discriminatory; the person who got the job there is, like Brooks, a graduate of Meharry Medical College, also black, but female. If Brooks is claiming sex discrimination, he has not met the burden imposed on him by *Murray v. Thistledown Racing Club, Inc.*, 770 F.2d 63, 67 (6th Cir.1985), of showing that the IHS is that unusual employer that discriminates against men in favor of women. Brooks also claims that various government officials made misrepresentations to him and accordingly the United States should be estopped from alleging that he breached his contract. Again, even assuming that this is true, such assertions of estoppel against the government are unavailing to litigants. *United States v. Swanson*, 618 F.Supp. 1231, 1240 (E.D. Mich. 1985).

Accordingly, plaintiff's motion for summary judgment is GRANTED on the issue of liability.**

SO ORDERED.

---

** On June 10, 1986 plaintiff filed a supplemental memorandum describing the amount due as of April 15, 1986 as $89,866.12 plus interest accruing at the rate of $16.79 a day thereafter. Defendant shall have 10 days to respond to the supplemental memorandum.